JOHNSON et al. v. AVERY et al.

(Court of Civil Appeals of Texas. San Antonio. May 1, 1912. Rehearing Denied June 12, 1912.)

1. WILLS (§ 439*) — CONSTRUCTION — INTENTION OF TESTATOR.

The court, in construing a will, must give force and effect to testator's intention when it can be ascertained.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

2. WILLS (§ 440*) — CONSTRUCTION — INTENTION OF TESTATOR.

The court, in construing a will, must ascertain the intention of testator from the terms of the will, if possible, and only in a case of ambiguity can resort be had to extrinsic evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 956; Dec. Dig. § 440.*]

3. WILLS (§§ 577, 794*) — CONSTRUCTION — PROPERTY DEVISED—ACCEPTANCE OF BENEFITS—EFFECT.

A husband and wife acquired community property, and the wife devised her community interest to her husband for life with remainder to her children. Thereafter the husband devised to each child of his first wife a specified number of acres "out of the real estate owned by me at the time of the death" of the wife, and disposed of more than half of the community property, and then left to his second wife the balance of his real estate for life with remainder over to her grandson. He designated the whole of his property as "my land," "my live stock," "my household and kitchen furniture." *Held*, that the husband's will disclosed an intention to dispose of the entire community property without recognizing the right of the children of the first marriage in the interest of his first wife therein, and where the children accepted the benefits under the will, and thereby received personal property to which they were not entitled except by force of the will, they must abide by their election to claim under the will, and they were not entitled to claim under the will of their mother.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1257; Dec. Dig. §§ 577, 794.*]

Appeal from District Court, Refugio County; John M. Green, Judge.

Action by Diana Johnson and another against Walter Avery and others for the construction of a will of William Avery, deceased. From a judgment construing the will, plaintiffs appeal. Reversed, rendered, and remanded.

Fowler & Fowler and Wayne Davis, all of Goliad, for appellants. C. F. & C. C. Carsner, of Victoria, for appellees.

FLY, J. This suit was instituted by appellants against appellees to obtain a construction of a will made by William Avery, who died on May 2, 1909. There is no controversy as to the facts, which are fully agreed to and are, briefly, as follows: William Avery and his lawful wife, Jane Avery, lived together many years, and during their marital life acquired 701.71 acres of land in different tracts and certain personal property; neither of them having any separate estate. On or about June 28, 1904, Jane Avery died leaving a will, which was duly probated, in which she bequeathed to William Avery all of her community interest in the personal property, and a life interest in her half of the real estate, and after his death in equal portions to her five children, Edward Avery, William Avery, Walter Avery, Laura Charleston, wife of George Charleston, and Lucy J. Withers, who are the appellees herein. On December 9, 1906, William Avery was married to Lucy Avery.

There were no children by the second marriage, and no property was owned by her when she married. There was no proof as to the personal property mentioned in the will, and presumably it was the community property of the second marriage. William Avery died, testate, on May 2, 1909, leaving surviving him his second wife, Lucy, and his children by his first wife, hereinbefore named, and an illegitimate daughter, Annie Williams, who had a son, Eugene Tillman, who is an appellant herein. The will of William Avery, whose construction was sought by this suit, is as follows:

"The State of Texas, County of Falls.

"Know all men by these presents, that I, William Avery, of the county of Refugio and state of Texas, being of sound mind and disposing memory, and being conscious of the uncertainty of life and the certainty of death, in the fear of Almighty God, do make and publish this, my last will and testament, hereby revoking all others.

"It is my will and I hereby direct that all my just and honest debts, including the expenses of my last sickness, funeral expenses, doctor bills, etc., be first paid out of any money that I may have on hand at the time of my death.

"(2) It is my will that the children of my first wife, Jane Avery, now deceased, shall have 67 acres of land each out of the real estate owned by me at the time of the death of their mother, except my son, Walter Avery, to whom I bequeath 80 acres.

"(3) I bequeath to my present wife, Lucy Avery, the balance of all my real estate except 50 acres out of the Simpson tract, which said 50 acres I hereby give to my daughter, Annie Williams, to be held by her during her life time and then in fee simple to my grandson, Eugene Tillman.

"(4) I further direct that all my live stock, consisting of 6 head of horses, 13 mules and 40 head of cattle shall be equally divided among my children and my present wife, Lucy, share and share alike, with the exception that my son, Ed., shall have only a part of the commonest mules for his part of said live stock.

"(5) It is my will that all my household and kitchen furniture together with all tools, farming implements, wagons, etc., shall be equally divided among my children and present wife, share and share alike, with the exception of one buggy, which I gave to my wife, Lucy, when it was bought. Said buggy shall remain hers.

"(6) It is my will that the rents on my lands shall be converted into money and the crops that belong to me as well, and that my note at the bank for $50.00 for purchase money on lands and my notes and accounts of whatever nature, if just and true, shall be paid out of said fund. Also that I. H. Weather's note for $80.00 due me shall be

collected and used for the foregoing purposes.

"(7) It is my will that my estate be divided in accordance with this will with as little expense as possible and that no legal proceedings be had hereon except to probate this will and to return an inventory.

"(8) I hereby appoint P. F. Marberry, of Marryanna, Texas, my executor to enforce this will.

"(9) It is my will that no property shall be sold at a sacrifice in order to raise money for any purpose. And it is my desire that my executor shall manage said estate like it was his own until this will can be properly executed and the terms thereof carried out agreeable to the best interests of all parties herein.

"(10) Rents from Nathan Burnett and Jake Scott shall be paid to the executor and used by him for payment of debts.

"Witness my hand at my home in Refugio county, Texas, this 20th day of June, A. D., 1908.

his<br>"William   X   Avery.<br>mark

"We, the undersigned, hereby sign our names as witnesses to the signature of the testator at his request, and we also sign this instrument in his presence, and in the presence of each other, said testator having signed this instrument in our presence.

"George B. Amery.<br>"John B. Amery."

The will was duly probated, but the executor named therein refused to qualify, and no administration was taken out on the estate; there being no necessity therefor. Lucy Avery has died since the death of William Avery, leaving as her only heirs her mother, brothers, and sisters, and the children of her sister Paralee Lott, deceased, who are the appellants herein. It is further agreed: "That each and all of the devisees mentioned in said will have agreed to accept and take under and by virtue of the terms of the said will, the same now being in full force and effect as the last will and testament of the said William Avery, deceased."

It is the contention of appellants that the terms of the will evidence that it was the intention of William Avery to devise the entire 701.71 acres of land, acquired as community estate, during the marital life of himself and his first wife, Jane Avery, and that an acceptance under the will precludes appellees from claiming anything, except what they obtain by a proper construction of the will; while appellees contend that there was no attempt to dispose of any land except the one-half community interest owned by William Avery. The contention of appellees was sustained by the trial court, and it was decreed that the five children of William and Jane Avery were entitled to all of the 701.71 acres of land except 2.86

acres, which was given to Annie Williams and Eugene Tillman, her son. The latter number of acres was evidently reached by subtracting four times 67 acres and 80 acres, the number left in the will to the five appellees, from one-half of 701.71 acres.

[1] In the construction of wills, the intent of the testator must be the controlling factor, for it is the aim and desire of the law to give force and effect to that intention when it can be ascertained.

[2] The intention should be ascertained from the terms of the will itself, if possible, and it is only in case of ambiguity in the language of the will that resort can be had to extraneous evidence.

[3] The language of the will seems to us to be plain and unambiguous, and evinces, to us, the intent upon the part of the testator to dispose of the whole of the community property of himself and his first wife, Jane Avery, although he really owned only one-half of it. In the second clause of the will he bequeathed to each of the four children of his first marriage 67 acres of land, and 80 acres to another, making a total of 348 acres of land. In a succeeding clause he devised to his illegitimate child and grandchild 50 acres of land, making a total of 398 acres, or about 47 acres more than he owned. He did not, however, contemplate that those bequests had exhausted his interest in the land, for he then left to his second wife all that remained after making those bequests. We cannot indulge in the hypothesis that the testator did not know that he had exhausted all the land he owned before he reached his wife, nor that he would indulge in the farce of bequeathing her something which he knew had no existence. Such would necessarily be the effect of the construction given the will in the lower court. Evidently the testator laid claim to the whole of the land and intended to bequeath it as set out in the will.

In the case of Rogers v. Trevathan, 67 Tex. 406, 3 S. W. 569, John C. Gallion and his wife, Sarah Gallion, owned 640 acres of land, community property, and he died, leaving a will by which he gave to each of his five daughters 108 acres of land, and 100 acres to his wife for life, with remainder to a daughter of his wife, and the Supreme Court, construing the will, held: "The entire tract of 640 acres, of which the land in controversy is a part, was community property, and of that Mrs. Gallion owned one-half. By the terms of this will, as found, the testator gave of that tract to each of his five daughters 108 acres, and the remaining 100 acres, embracing that part used as a homestead, he gave to his wife during her life, with remainder to Mrs. Trevathan. This clearly evidenced the intention of the testator to dispose of property which was not his own, and at the same time to confer upon his wife a right which she would not have, if his estate was solvent; for, under the law then

in force, the homestead belonging to a solvent estate would have been subject to partition as other real property. This presented a case in which the wife was called upon to elect whether she would take under his will." The court further said: "Having only an undivided interest in the land, were the terms of the will ambiguous, the testator would be presumed to have intended to devise only his interest in the entire tract; but the specific devises of a certain number of acres to each of his five children, and of the named residue to his wife for life, with remainder to Mrs. Trevathan, leave no doubt of his intention to dispose of the entire tract." So in this case the bequest of 348 of the 701.71 acres of land to his children by his first wife, followed by a bequest to his second wife, Lucy Avery, of "the balance of all my real estate, except 50 acres out of the Simpson tract, which said 50 acres I hereby give to my daughter, Annie Williams, to be held by her during her lifetime and then in fee simple to my grandson, Eugene Tillman," clearly shows that William Avery was endeavoring by his will to dispose of all the real estate owned by him and his first wife, Jane Avery. His description of the real estate as that "owned by me at the time of the death of their mother" indicates, not that he was confining the property to one-half, but that he held to the idea that by her death he owned the whole of the land, as is clearly shown by the bequests made to his wife and children. To hold otherwise would destroy and render futile the desire, so clearly expressed by the testator, to give his illegitimate daughter and her child and his wife a portion of the land. It is inconceivable that the testator intended to give Annie Williams and her son less than three acres of land and his wife nothing at all out of his real estate. He evidently claimed the whole of the real estate and intended to dispose of it by his will. He designates the whole of the property as "my land," "my live stock," "my household and kitchen furniture," "the rent on my land," and "the crops that belong to me." He did not recognize the right of his children in their mother's property, or the right of the second wife in the horses, mules, and cattle which, in the absence of proof, must be assumed to have been the community property of the second marriage.

Speaking of a similar will, this court held in Skaggs v. Deskin, 66 S. W. 793: "We are of opinion that the will, construed by its terms, undertook to dispose of the entire estate. The reference to the land in the will indicates that the testator had in his mind the entire tract, and not an undivided half thereof." The property disposed of by the will in that case belonged to the community, and the language used in that will was no stronger nor more pointed than in this.

As to an acceptance under the terms of the will, there is no dispute. It is agreed that all the devisees accepted under the will, and appellees will be bound by such election, which means that, when a party takes under a will, he must accept and conform to all of its provisions. He cannot accept one part and reject another. Appellees received personal property under the terms of the will to which they were not entitled and which they could not have obtained except by force of the will, and, having elected to receive that property, they take under the whole of the will as it is. Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Chace v. Gregg, 88 Tex. 552, 32 S. W. 520; Lee v. McFarland, 19 Tex. Civ. App. 292, 46 S. W. 281; Gilroy v. Richards, 26 Tex. Civ. App. 355, 63 S. W. 664. "The principle of election is that he who accepts a benefit under a will must adopt the whole contents of the instrument, so far as it concerns him, conforming to its provisions and renouncing every right inconsistent with it." Philleo v. Holliday, 24 Tex. 38.

Appellees chose to take under the will which gave them more than compensation for the same amount of land of which they were deprived, and they must abide by their election to claim under the will, which we construe to have disposed of all the 701.71 acres of land belonging to them and their father.

If sentiment were permitted to control the decision of a case, a successful appeal could be made to it in a case like this, where a part of the earnings of their parents have been diverted from appellees and placed in the hands of strangers not connected by any ties with the original owners of it, but the "court awards it, and the law doth give it."

The judgment of the district court is reversed, and judgment here rendered in favor of appellants for the land sued for; and the cause is remanded to the lower court in order that the land may be partitioned according to the construction placed by this court upon the will of William Avery; and it is the order of this court that the appellants recover of appellees all costs in this behalf expended in this court as well as the lower court, the costs that may hereafter accrue in the partition of the land to be apportioned as the law directs.