Estelle STEWART et al., Petitioners,

v.

Bonnie Belle SELDER et al., Respondents.

No. B–2547.

Supreme Court of Texas.

Oct. 6, 1971.

Concurring Opinion Nov. 17, 1971.

Andress & Woodgate, William Andress, Jr., Dallas, for petitioners.

Allen & Russell, W. R. Allen, Jr., Garland, Stark & Barnhart, Richard S. Stark, Gainesville, for respondents.

WALKER, Justice.

This is a suit to construe the will of Thelma Evelyn Boyd, who died on December 27, 1966. The principal question to be decided is whether the term "cash" as used in Section II of the will includes stocks and bonds owned by the testatrix at the time of her death.

The will, which is dated May 2, 1963, reads as follows:

State of Texas
County of Dallas

Know all men by these present that I, Thelma Evelyn Boyd, of the County of Dallas, State of Texas, being of sound and disposing mind and memory, do make this my last will and testament, hereby rovolking [sic] all wills by me at anytime heretofore made.

I My one-fourth interest in the homestead and furnishings located at 624 N. Vernon Ave., Dallas, Texas, including two adjoining lots of 50 feet each, facing Fouraker St., 700 blk., to my sister, Genevieve Boyd Stewart.

Also to my sister, Seth Thomas eight-day banjo clock.

Electric Coffee urn set with tray, cream and sugar, Community plate.

Diamond Solitaire platinum ring with bow-knot of small diamonds on each side of center stone.

One-half of coin collection.

$25,000.

II If there is any cash, after expenses and debts are paid, I leave to my aunt, Estelle Stewart.

To my Aunt, Estelle Stewart, the duplex, formerly numbered 517–519 E. 13th, now 731–733 So. R. L. Thornton Freeway, including furnishings, except those willed otherwise, or any my sister might want.

One-half of coin collection.

$10,000.

III To my aunt, Mabel Stewart Renfro, $2,000.

IV To Ila Dewey Mandeville, Normandie pattern flat sterling, service for eight.

$1,000.

V To Annie Laurie [sic] Howard, the small H. O. Kelly, unframed oil painting.

$1,000.

VI To Teddy Jeanning Adcock Gardner, $5,000.

VII To Amy Rosson, Movie camera and equipment.

$1,000.

VIII To Imogene Pearce Johnson, $1,000.

IX To Adele Gladson Massey, $1,000.

I appoint Annie Laura Howard and Estelle Stewart independent co-executrixes and direct no action be had in the County Court, other than to probate this

will and file inventory of my estate and list of claims.

In testimony whereof I have hereunto set my hand this the 2 day of May, 1963.

/s/ Thelma Evelyn Boyd

Signed by Thelma Evelyn Boyd as her last will and testament in the presents [sic] of us, the attesting witnesses, who have hereunto subscribed our names in the presence of said Thelma Evelyn Boyd at her special instance and request and in the presence of each other this the 2 day of May, 1963.

/s/ Myrtle Matthews Payne

/s/ Lena McDonald Lokey

It will be noted that the testatrix devised and bequeathed: (1) "my one-fourth interest in the homestead and furnishings"; (2) a duplex on R. L. Thornton Freeway with furnishings; (3) a coin collection; (4) certain household furnishings and personal effects; and (5) "any cash, after expenses and debts are paid." She also made nine cash bequests aggregating $47,000.00, and there is no residuary clause. The present suit was filed because the testatrix owned at the time of her death several items of property that are not disposed of by the will if the words used are given their usual and ordinary meaning. This property consists primarily of an additional undivided one-fourth interest in the homestead, a vacant lot, and an undivided one-half interest in various stocks and bonds.

The suit was brought by the sister, Genevieve Stewart, and by Bonnie Belle Selder et al., who are half brothers and half sisters of the testatrix, against Estelle Stewart and Annie Laura Howard, individually and as independent executrices of the estate, to recover the balance of the property in the hands of defendants. Defendants answered that all debts, expenses and legacies had been paid; that defendants had in their possession cash in the amount of approximately $60,000.00; and that the cash in their hands was left by the will to Estelle Stewart. They disclaimed any interest in the vacant lot and homestead and requested the court to determine whether the additional one-fourth interest in the homestead passed to Genevieve Stewart under the will or to the plaintiffs by descent and distribution.

The trial court concluded that while title to the vacant lot passed to plaintiffs by descent and distribution, it was the intention of the testatrix to leave her full one-half interest in the homestead to her sister, Genevieve Stewart, and to leave all her stocks, bonds, securities, deposits, and other choses in action readily convertible into cash to her aunt, Estelle Stewart. Judgment was rendered accordingly, but this judgment was reversed, in part, by the Court of Civil Appeals. The intermediate court affirmed with respect to the vacant lot but reversed as to all property not expressly and specifically described in the will and awarded the same to the plaintiffs in the following proportions: an undivided two-sevenths to Genevieve Stewart and an undivided one-seventh to each brother and sister of the half blood. 461 S.W.2d 239. We affirm the judgment of the Court of Civil Appeals.

The Court of Civil Appeals reasoned that the will is not ambiguous and that its meaning must therefore be determined from the language of the instrument without reference to extraneous circumstances. Since it found nothing in the will to suggest that the testatrix used the word "cash" to include property of all kinds or securities readily convertible into cash, the court concluded that the term must be given its usual and ordinary meaning. In our opinion this is not the proper approach to the construction of a will.

There are a number of cases in which our courts have said or suggested that extraneous evidence may not be received as an aid in construing an unambiguous will. See Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994; Foy v. Clemmons, Tex.Civ.App., 365 S.W.2d 384 (wr. ref. n. r. e.); Johnson

v. Avery, Tex.Civ.App., 148 S.W. 1156 (reversed, 108 Tex. 294, 192 S.W. 542.) On the other hand, we have stated on several occasions that where the intention of the testator is not clearly expressed by the language of the will, it may be found by looking to the provisions of the instrument as a whole and to the circumstances surrounding its execution. See Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579; Haile v. Holtzclaw, Tex.Sup., 414 S.W.2d 916.

As Professor Wigmore points out, the words of a legal instrument are simply indices to external things, and words always need interpretation. It is always necessary to determine their association with external objects, and all circumstances should be considered that go to make clear the sense in which they were used, i. e., their association with things. According to Wigmore, it is in the field of wills that this principle is seen in unrestricted operation and has often been judicially avowed. See Wigmore on Evidence, 3rd ed. 1940, § 2470.

■■■ A will is a unilateral instrument, and the court is concerned only with the intention of the testator as expressed in the document. The sense in which the words were used by the testator is the ultimate criterion, and the court may always receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time. See Peet v. Commerce & E. S. R. Co., 70 Tex. 522, 8 S.W. 203; Hunt v. White, 24 Tex. 643; Jackson v. Templin, Tex.Com.App., 66 S.W.2d 666; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Page on Wills, 1941 ed., p. 621, § 1617.

■■■ Extrinsic evidence of that nature is received, of course, to assist the court in determining the sense in which the words were used by the testator. The general principle that admits the evidence for that purpose is subject to at least one ex-

ception. The intention of the testator must be found, in the last analysis, in the words of the will, and for that reason his other declarations of intention dealing with the subject of the specific document are generally not admissible. These declarations may be received only as an aid in resolving certain specific problems of interpretation, such as an equivocation or latent ambiguity. See Peet v. Commerce & E. S. R. Co., supra; Hunt v. White, supra; Wigmore, supra, § 2471 et seq. The extrinsic evidence set out below will be considered by us without regard to whether the will is ambiguous.

The testatrix had been married one time. She was divorced in 1948, and her maiden name was restored at that time. No children were born to her and none was adopted. Her parents were Julius Arthur Boyd and Vaida Boyd. Two children were born of their marriage: the testatrix and her sister, Genevieve Stewart.

The parents of the testatrix were divorced. Both remarried, and both are now dead. Julius Arthur Boyd was survived by the two children born to his first marriage and by three sons and two daughters born to his second marriage. These five half sisters and half brothers of the testatrix are plaintiffs in the present case. There has been little comunication between them and the testatrix over the years. Three of them had never seen the testatrix. Two of them had seen her once and telephoned her once. Some of them did not know that she had been married and divorced.

The second marriage of Vaida Boyd, mother of the testatrix, was to Whitney M. Montgomery. They accumulated a substantial community estate, and no children were born to their marriage. According to the briefs, Vaida Boyd Montgomery died intestate in 1959. The testatrix and her sister, Genevieve Stewart, thereupon inherited one-half of the community property owned by their mother and stepfather. However, the entire community estate was left in the possession of the stepfather,

and there was no division prior to the death of the testatrix.

Whitney M. Montgomery died shortly before the death of the testatrix. Under the terms of his will, the residue of the estate was devised and bequeathed to the testatrix and her sister, Genevieve Stewart. The testatrix, who was named as independent executrix without bond, filed the will for probate during her lifetime, and it was admitted to probate after her death.

The inventory and appraisement of the estate of Thelma Evelyn Boyd, with which we are now concerned, shows that the testatrix owned the property set out below and that her interest therein was appraised at the amounts indicated, to-wit:

*Property Owned by Testatrix Individually*

| | |
|---|---|
| Duplex | $12,000.00 |
| Vacant lot | 150.00 |
| Bank accounts | 22,785.73 |
| Household goods, coin collection and personal effects | 1,510.71 |

*Interest in Property Acquired by Devise and Descent from Her Mother and Stepfather*

| | |
|---|---|
| Homestead and two adjoining lots | $ 6,500.00 |
| Checks on hand and cash in bank | 12,643.90 |
| Stocks and bonds | 91,951.38 |
| Household goods, print shop equipment, automobile and personal effects | 1,812.50 |

The exact source of the approximately $60,000.00 in the hands of defendants is not disclosed by the evidence. It seems reasonably clear from their answer, however, that the checks were cashed and the stocks and bonds liquidated, that the proceeds were added to the bank deposits, that the cash bequests, debts, funeral expenses, Federal estate tax, and expenses of administration were paid therefrom, and that the approximately $60,000.00 mentioned in the answer is the balance then remaining in the hands of defendants. Unless the word "cash" as used by the testatrix in Section II of the will includes the stocks and bonds, a substantial part of the $60,000.00 passed by the laws of descent and distribution rather than under the will.

Defendants emphasize the rule that a person who makes a will is generally presumed to have intended to dispose of all his property. See Briggs v. Peebles, 144 Tex. 47, 188 S.W.2d 147. They point out that while the half brothers and sisters were practically unknown to the testatrix, there was a close relationship between her and the full sister and aunt. The testatrix and her aunt, Estelle Stewart, lived in adjoining apartments in the duplex on Thornton Freeway. The sister, Genevieve Stewart, lived in the homestead with her parents, and the testatrix worked in a print shop operated by her mother and stepfather on the premises.

Defendants also say that when the will was executed in 1963, the testatrix had only about $3,000.00 on deposit in the bank, owned a one-fourth interest in the homestead, and owned an interest worth more than $50,000.00 in stocks and bonds that were readily convertible into cash. They insist that in these circumstances the gift of any cash remaining after payment of debts and expenses was. intended to include the residue of the personal estate or at least the residue of the stocks and bonds.

The presumption against intestacy is one of the factors to be considered in determining the intention of the testatrix, but it is not to be used as an excuse for violating the testamentary scheme adopted by her. See Carr v. Rogers, Tex.Sup., 383 S.W.2d 383; Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885. The word "cash" in its strict sense refers to coins and paper money. It is also used, less strictly, to mean not only money but also

checks and demand deposits in banks and savings institutions. See Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779; Webster's New International Dictionary, 2nd ed. 1940. In our opinion that is the usual and ordinary meaning of the term when used in a will to refer to a class or type of property owned by the testator. See Beit v. Beit, 98 Conn. 274, 119 A. 144; In re Feist's Will, 170 Misc. 497, 10 N.Y.S. 2d 506. There are also cases in which the word has been held to include other types of property, the courts being somewhat more inclined to give it a broad construction where necessary to avoid partial intestacy. See Flower v. Dort, Tex.Civ.App., 260 S.W.2d 685 (wr. ref. n. r. e.); In re Carrillo's Estate, 187 Cal. 597, 203 P. 104; Lane v. Railey, 280 Ky. 319, 133 S.W.2d 74; In re Bruin's Estate, 370 Mich. 34, 120 N.W.2d 752; Baldwin v. Baldwin, 107 N.J. Eq. 91, 151 A. 741. The word "money" is also a term of flexible meaning that ordinarily refers to cash or coin, but it has often been construed in will cases to mean wealth or property. See Paul v. Ball, 31 Tex. 10; Annotations, 93 A.L.R. 514, 173 A.L.R. 656.

■ We recognize that the word "cash" may properly be interpreted to mean securities readily convertible into cash or other types of property where the provisions of the will and the surrounding circumstances show that the term was used in that sense by the testator. Our problem here is that the record does not establish some of the essential facts upon which defendants rely. The evidence does not disclose the nature and value of all property owned by the testatrix when her will was made in 1963. There is testimony from which the trial court might have inferred that she had only $3,109.99 on deposit in her name at that time. The will itself supports an inference that she owned the property specifically mentioned therein, and it also appears that she owned an interest in the community estate of her mother and stepfather. There is, however, no evidence to show the nature and value of the property held by Whitney M. Montgomery in 1963.

■ We do have the inventory and appraisement of the estate of Whitney M. Montgomery as well as the inventory and appraisement of the estate of the testatrix. These show the nature and value of the property held by each decedent at the time of death, but we are concerned with the situation of the testatrix when her will was made over three years earlier. While the inference of continuity may run backward as well as forward, the probability of continuance depends on the nature of the specific fact sought to be established and the circumstances of the particular case. See Wigmore, supra, §§ 382, 437. No proof was offered here concerning the property owned by Whitney M. Montgomery and Mrs. Vaida Montgomery at the time of the latter's death. Since he remained in control of all the property after her death, he may have disposed of securities registered, or invested cash on deposit, in his name. There is no evidence as to whether he did or did not do so during his lifetime, but it is likely that most or all of the securities and bank deposits were carried in his name. In these circumstances it is our opinion that the existence of certain items of property at the time of his death will not support a finding that the same items were on hand when the will of the testatrix was made in 1963. It is also our opinion that the valuation of listed stocks and bonds in 1966 does not tend to establish their value three years earlier.

Even if we assume that neither the property nor its value changed after the will was made in 1963, the facts proved do not support the construction urged by defendants. The record is silent as to when or under what circumstances the vacant lot was acquired. The other property on hand when the will was made and not mentioned there consists of the stocks, bonds, automobile, print shop equipment and personal effects. The aggregate value of the one-fourth interest of the testatrix in these

items was $46,431.94, and she made cash bequests aggregating $47,000.00. Aside from the vacant lot, therefore, the will as written disposes of all property owned by the testatrix when the document was signed.

■ There is no basis then for concluding that the words of the will have anything other than their usual and ordinary meaning. It seems clear that the testatrix included no residuary clause because she thought the undisposed of residue of her estate would be exhausted in satisfying the cash bequests. The possibility that the stocks and bonds would not yield enough money to pay the legacies may also have occurred to her, and this could be the reason she directed that any cash remaining after payment of her debts and expenses should go to Estelle Stewart. When all the provisions of the will are considered in the light of the surrounding circumstances, it is our opinion that the testatrix meant precisely what she said and that the term "cash" as used in her will includes only the checks and bank deposits on hand at her death. It is also our opinion that the words "debts and expenses" means debts owing by the testatrix at the time of her death, funeral expenses, and expenses of administration. They do not include the Federal estate tax, which is payable out of the undisposed of residue of the estate. See Sinnott v. Gidney, 159 Tex. 366, 322 S.W.2d 507; Annotation, 37 A.L.R.2d 7, 136 et seq.

As for the additional one-fourth interest in the homestead, adjoining lots and furnishings left to the testatrix by her stepfather, the Court of Civil Appeals held that this interest did not go to Genevieve Stewart under Section I of the will but is part of the residue of the estate and passed to the heirs at law by descent and distribution. It is not necessary for us to consider that holding, because no application for writ of error was filed by Genevieve Stewart.

■ Although no one complains of the form of the judgments entered below, neither judgment is as specific as it might be. There is a legal description of the vacant lot but not of the other real property, which is described only by street number. The judgment of the Court of Civil Appeals purports, in so many words, to affirm the trial court's judgment with respect to the vacant lot and "insofar as it complies with the bequests and devises to named persons expressly and explicitly describing the property so given." The judgment of the trial court was reversed "as to all property not expressly and specifically described in the above bequests and devises," and judgment was rendered that "said property, that is the residual estate of the testatrix, shall go to the lawful heirs of the testatrix in accordance with the law of descent and distribution as follows: two-sevenths of said property to Genevieve Boyd Stewart, the full sister of the testatrix, and one-seventh to each of the half brothers and half sisters." To avoid any question in the future concerning the property awarded to Estelle Stewart, we interpret the judgment of the Court of Civil Appeals as declaring that she is entitled to: (1) the duplex, furnishings, one-half of coin collection, and $10,000.00 legacy devised and bequeathed to her by Section II of the will; and (2) an amount equal to the interest of the testatrix in checks and bank deposits on hand at the time of her death less the indebtedness owing by the testatrix, her funeral expenses, and the expenses of administration.

The judgment of the Court of Civil Appeals is affirmed.

STEAKLEY and DANIEL, JJ., note their dissent.

CALVERT, Chief Justice (concurring).

I concur in the judgment rendered. I do not agree with some of the broad lan-

guage appearing in the court's opinion, which is not necessary to the decision.

In the context of explaining when extrinsic evidence may be looked to in the interpretation of written instruments, the court states "* * * and words *always* need interpretation. * * * A will is a unilateral instrument, and the court is concerned only with the intention of the testator as expressed in the document. The sense in which the words were used by the testator is the ultimate criterion, and the court may *always* receive and consider evidence concerning the situation of the testator, circumstances existing when the will was executed, and other material facts which will enable the court to place itself in the testator's position at the time. * *" (Emphasis mine.)

I would agree that extrinsic evidence may be introduced to explain ambiguous provisions or provisions of doubtful meaning in a will, or to resolve latent ambiguities which may result from application of the terms of a will. I do not agree that extrinsic evidence is admissible or may be considered when the wording of a will is clear, plain and unambiguous. For example, if a married person's will should provide, "I devise and bequeath all of my separate property to my son, A, and all of my interest in the community property owned by my wife and me to my son, B," I do not think extrinsic evidence would be admissible, or might be considered, to show that the testator did not intend to dispose of the property in the manner which his will so plainly and clearly disposed of it. The Constitution and statutes so clearly define separate and community property that the terms as used by the testator cannot have other and different meanings than those ascribed to them in law. In this situation, the words are not subject to interpretation and the court would not be authorized to receive and consider evidence concerning the situation of the testator, or other extrinsic evidence, and from such evidence give the words a different meaning. Many other such examples could be imagined.