ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 13, 2005

The Honorable Carole Keeton Strayhorn
Texas Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Opinion No. GA-0324

Re: Whether the Texas Treasury Safekeeping Trust Company may enter into repurchase agreement contracts that contemplate the possibility of cash as collateral (RQ-0295-GA)

Dear Comptroller Strayhorn:

You ask whether the Texas Treasury Safekeeping Trust Company may enter into repurchase investment contracts that contemplate the possibility of cash as collateral when other collateral is not available to the party contracting with the state.[1] You also ask whether Government Code chapter 404, subchapters C and D, and chapter 2257, which establish collateral requirements for public funds deposited with banks and other financial institutions, would have to be amended to authorize the use of cash as collateral on an overnight basis under repurchase agreements when other eligible securities are not available.

## I. Deposit of Public Funds

Government Code chapter 404 sets out the comptroller's powers and duties over the state treasury. *See* TEX. GOV'T CODE ANN. § 404.0011 (Vernon 2005); *see also id.* § 404.001(8) (defining "[t]reasury" as "state funds subject to the custody and control of the comptroller and available for appropriation by the legislature"). Subchapters C and D of chapter 404 authorize the comptroller to deposit public funds with private financial institutions, subject to specific collateral requirements. The comptroller may designate as a state depository certain types of financial institutions doing business in Texas. *See id.* § 404.021 (a state or national bank, a savings and loan association or credit union); *see also id.* § 404.022 (application for designation as a state depository). State funds may not be deposited with a depository unless the depository secures the funds with collateral consisting of "eligible investment securities acceptable to the comptroller." *Id.* § 404.031(a).

Chapter 2257 of the Government Code, the Public Funds Collateral Act, governs a state or local governmental entity's deposit of public funds that are not managed by the comptroller under

---

[1]Letter from Timothy Mashburn, General Counsel, Texas Comptroller of Public Accounts, to Honorable Greg Abbott, Texas Attorney General (Nov. 17, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state .tx.us) [hereinafter Request Letter].

chapter 404. *See id.* § 2257.002(3) (Vernon 2000). Chapter 2257 authorizes these public entities to deposit public funds with an eligible institution, requiring such deposits to be secured "by eligible security to the extent and in the manner required by this chapter." *Id.* § 2257.021; *see also id.* § 2257.002(4) (defining "eligible security").

## II.     Texas Treasury Safekeeping Trust Company

Chapter 404 of the Government Code authorizes the comptroller to invest public funds as well as to deposit them with depository institutions. "State funds not deposited in state depositories shall be invested by the comptroller" in the investments expressly enumerated in Government Code section 404.024(b). *Id.* § 404.024(a)-(b) (Vernon 2005). The comptroller may also invest funds held by the Texas Treasury Safekeeping Trust Company ("TTSTC"or the "trust company"), a special-purpose trust company incorporated by the comptroller pursuant to chapter 404, subchapter G. *See id.* § 404.102(a). TTSTC provides "a means for the comptroller to obtain direct access to services provided by the Federal Reserve System and to enable the comptroller to manage, disburse, transfer, safekeep, and invest funds and securities more efficiently and economically by using established and reasonable financial practices, including the pooling of funds." *Id.*

The comptroller is the "sole officer, director, and shareholder of the trust company." *Id.* § 404.104(a). She "may deposit funds and securities with the trust company to achieve its purpose." *Id.* § 404.102(a). TTSTC may "receive, transfer, and disburse money and securities as provided by statute or belonging to the state, agencies and local political subdivisions of the state," as well as certain other entities created on behalf of the state, a state agency, or a political subdivision of the state. *Id.* § 404.103(a). Funds held by the trust company "shall be invested in obligations authorized by law for the investment of funds held and managed by the comptroller." *Id.* § 404.106(b). *But see id.* § 404.106(c) (rule for investing specific funds held by trust company for a particular participant).

TTSTC also manages and invests funds of the Texas Local Government Investment Pool[2] ("TexPool"), a public funds investment pool organized under the Interlocal Cooperation Act, Government Code chapter 791, and the Public Funds Investment Act, chapter 2256 of the Government Code. *See id.* §§ 791.003(3)(L), .011(a) (Vernon 2004); 2256.002(6) (Vernon 2000) (defining "investment pool"), 2256.003(a)(4) (Vernon 2000) (investment authority of investment pool); *see also* Tex. Att'y Gen. Op. No. JC-0359 (2001) at 1 (organization of TexPool). "With respect to specific funds held by the trust company for a particular participant," TTSTC "has the same investment authority as that participant for those specific funds." TEX. GOV'T CODE ANN. § 404.106(c) (Vernon 2005).

## III.    Repurchase Agreements

Under chapter 404, the comptroller may invest state funds not placed in state depositories in "direct security repurchase agreements," among other investments. *See id.* § 404.024(a)-(b). A "direct security repurchase agreement" is

---

[2]*Id.* at 1.

an agreement under which the state buys, holds for a specified time, and then sells back any of the following securities, obligations, or participation certificates:

>   (A) United States government securities;

>   (B) direct obligations of or obligations the principal and interest of which are guaranteed by the United States; or

>   (C) direct obligations of or obligations guaranteed by agencies or instrumentalities of the United States government.

*Id.* § 404.001(3). Thus, state funds held by TTSTC may be invested in direct security repurchase agreements. *See id.* § 404.106(b).

A repurchase agreement, although in the form of a sale, is essentially a short-term collateralized loan. *See Sec. & Exch. Comm'n v. Miller*, 495 F. Supp. 465, 467 (S.D.N.Y. 1980); *see also In re Legel, Braswell Gov't Sec. Corp.*, 648 F.2d 321, 325 (5th Cir. 1981). The transactions are structured as sales and repurchases rather than straight loans because certain regulations of the Federal Reserve Bank treat repurchase agreements differently from ordinary loans and because there are various legal obstacles to using ordinary collateralized loans. *See Miller*, 495 F. Supp. at 467. Two agreements are made simultaneously: (1) the "borrower" agrees to sell and the "lender" to buy specified securities at a specified price, and (2) the "borrower" agrees to buy and the "lender" to sell at a specific future date the same securities for the same price plus interest. *See id.* In the initial agreement, the lender purchases securities from the borrower and, in the second agreement, the lender resells these securities to the borrower. In the repurchase agreements you describe, TTSTC is the lender, purchasing securities with funds on hand. The borrower, or "counterparty," as you term the borrower, is a "large money-center bank"[3] doing business in Texas or a primary government securities dealer.[4] *See* Request Letter, *supra* note 1, at 2; *see also* TEX. GOV'T CODE ANN. § 2256.011(a)(4) (Vernon 2000) (repurchase agreement under section 2256.011 must be "placed through a primary government securities dealer, as defined by the Federal Reserve, or a financial institution doing business in this state"). Excess funds invested in overnight repurchase agreements are expected to earn more interest than the same amount deposited in a bank account. *See* Request Letter, *supra* note 1, at 1.

---

[3]A "money center bank" is a "large bank in a major financial center which borrows from and lends to governments, corporations, and other banks, rather than consumers." *See* InvestorWords.com *at* http://www.investorwords.com/3102/money_center_bank.html (last visited Mar. 2, 2005); *see also* IX OXFORD ENGLISH DICTIONARY 994 (2d ed. 1989) (a money-center bank is "a place of pre-eminent importance in the financial affairs of a region or country; *spec.* New York").

[4]A primary government securities dealer is "a firm with which the Federal Reserve conducts its open market operations." 5 C.F.R. § 6801.102(f) (2005).

TTSTC may also invest TexPool funds in repurchase agreements as authorized by chapter 2256. *See* TEX. GOV'T CODE ANN. § 404.106(c) (Vernon 2005) (where TTSTC holds specific funds for a particular participant, it has the same investment authority as the participant for those specific funds). "[A]n investment pool acting on behalf of two or more local governments, state agencies, or a combination of those entities" may invest its funds and funds under its control in investments authorized by the Public Funds Investment Act, Government Code chapter 2256. *Id.* § 2256.003(a)(4) (Vernon 2000); *see id.* §§ 2256.001 (short title); .003(a) (investment authority of governmental entities). Chapter 2256 authorizes public entities to invest in "[a] fully collateralized repurchase agreement" if it

> (1) has a defined termination date;
>
> (2) is secured by obligations described by Section 2256.009(a)(1); and
>
> (3) requires the securities being purchased by the entity to be pledged to the entity, held in the entity's name, and deposited at the time the investment is made with the entity or with a third party selected and approved by the entity; and
>
> (4) is placed through a primary government securities dealer, as defined by the Federal Reserve, or a financial institution doing business in this state.

*Id.* § 2256.011(a). Pursuant to section 2256.011(a)(2) above, the repurchase agreement must be secured by "obligations, including letters of credit, of the United States or its agencies and instrumentalities." *Id.* § 2256.009(a)(1) (Vernon Supp. 2004-05); *see also id.* § 2256.009(b) (investments not authorized by section 2256.009).

You state that the repurchase agreement counterparty keeps the securities that are bought and sold under repurchase agreements at a custodian bank, usually a large money-center bank located in New York City. *See* Request Letter, *supra* note 1, at 2. "In many cases, the repurchase agreement counterparty will keep billions of dollars in securities at the custodian" to serve as collateral for money lent to it by entities like TTSTC. *See id.* With respect to the overnight repurchase agreements you inquire about, you explain that the counterparty will notify the custodian bank, usually by mid-day, of all its repurchase agreements for that night. *See id.* The custodian bank allocates on its books the counterparty's securities to TTSTC and other repurchase agreement lenders for the term of the agreement, usually for that night. *See id.* In some cases, the counterparty's securities at the custodial bank are insufficient to cover all of its repurchase agreements for a particular evening. *See id.* Usually this occurs late in the day, when the counterparty does not have time to buy more securities or move securities to the custodian bank from another location. Under these circumstances, it is customary in the banking industry for the lender under a repurchase agreement to accept cash as part security for its loan. *See id.*

## IV.    Questions

You wish to know whether TTSTC as lender may accept cash as part security for its loan of funds under a repurchase agreement. You state that your inquiry concerns a repurchase agreement that permits cash to be "a substituted eligible security" if (1) cash is used only when other eligible securities are not available, and (2) there is no diminution of yield resulting from this substitution. *See id.* at 5. We paraphrase your questions as follows:

1. If the custodian holds cash for the benefit of the buyer (because U.S. Treasury securities or agency securities are not available), is it necessary for such cash to be secured by collateral pursuant to Government Code chapter 404, subchapters C and D, and chapter 2257?

2. May the repurchase agreement contemplate the possibility that cash could be one of the eligible securities allocated to the repurchase agreement?

3. Would amendments to Government Code chapter 404, subchapters C and D, and chapter 2257, which require specific kinds of collateral for the deposit of public funds, be necessary to authorize the use of cash as collateral on an overnight basis under repurchase agreements?

*See* Request Letter, *supra* note 1, at 1, 3.

Your first question assumes that the custodian bank may hold cash as collateral for a repurchase agreement in which TTSTC has invested. Your second question asks whether you have correctly assumed that the custodian bank may hold cash as collateral for a repurchase agreement in which TTSTC has invested; in essence, whether the premise underlying your first question is correct. Because your first question is premised on a particular answer to the second, we will begin by addressing your second question.

## V.    May TTSTC Invest in a Repurchase Agreement under Which Cash Could Be an Eligible Security?

In construing statutes, the courts seek to determine and give effect to the legislature's intent. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *see also Am. Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95 (Tex. 2000). A court will look first to the "plain and common meaning of the statute's words." *City of San Antonio*, 111 S.W.3d at 25. If a statute's meaning is unambiguous, a court will generally interpret the statute according to its plain meaning. *Id.*

Government Code sections 404.024 and 2256.011 do not expressly include cash as an eligible security. Section 404.024 authorizes the comptroller to invest state funds in "direct security

repurchase agreements," in which the following securities may be collateral for the loan of state funds:

> (A)   United States government securities;
>
> (B)   direct obligations of or obligations the principal and interest of which are guaranteed by the United States; or
>
> (C)   direct obligations of or obligations guaranteed by agencies or instrumentalities of the United States government.

TEX. GOV'T CODE ANN. § 404.001(3) (Vernon 2005). Repurchase agreements that section 2256.011 authorizes for TexPool must be secured by "obligations, including letters of credit, of the United States or its agencies and instrumentalities." *Id.* § 2256.009(a)(1) (Vernon Supp. 2004-05); *see id.* § 2256.011(b) (Vernon 2000). Neither provision authorizes cash as security for the repurchase agreements in which TTSTC may invest state funds and TexPool funds. *See generally Stewart v. Selder*, 473 S.W.2d 3, 8-9 (Tex. 1971) (the ordinary meaning of "cash" in a will includes checks and demand deposits in banks as well as coins and paper money).

You note that the relevant statutes do not expressly include cash as an eligible security for a repurchase agreement. Request Letter, *supra* note 1, at 4. You further state that you do not believe this omission was intended to prohibit using cash as security under the circumstances you describe and that "[o]n its face, the purpose of listing the securities was to limit the universe of eligible securities to risk-free and highly liquid securities." *Id.* You state that there is no risk associated with holding cash, other than lost purchasing power if it is not earning income, and for that reason you question whether the legislature necessarily intended to exclude cash from serving as collateral under a direct security repurchase agreement. *See id.*

Your suggested reading of Government Code sections 404.001(3) and 2256.009(a)(1) overlooks the rule of statutory construction requiring us to find the legislature's intent in the plain, unambiguous language of the statute. *City of San Antonio*, 111 S.W.3d at 25. We cannot insert additional words into a statutory provision unless it is necessary to give effect to the clear legislative intent. *See Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex. 1981).

The legislature has moreover expressly authorized securities lending programs under chapters 404 and 2256 that permit cash to be used as a security. Section 404.024(*l*) authorizes the comptroller to establish a securities lending program under which the loan must be fully secured with "*cash*, obligations, or a combination of *cash* and obligations." TEX. GOV'T CODE ANN. § 404.024(*l*) (Vernon 2005) (emphasis added). Government Code section 2256.0115 provides for a securities lending program that requires a loan to be secured by pledged securities, pledged irrevocable letters of credit, or cash invested in accordance with specific sections of chapter 2256 that authorize (1) investment in obligations of or guaranteed by governmental entities, (2) commercial paper, (3) mutual funds, and (4) investment pools. *See id.* § 2256.0115 (Vernon Supp. 2004-05); *see also id.* §§ 2256.009 (Vernon Supp. 2004-05), 2256.013, .014, .016 (Vernon 2000).

These securities lending provisions show that the legislature expressly authorizes the use of cash as security when it intends to do so. *See Miller v. Keyser*, 90 S.W.3d 712, 719 (Tex. 2002). Government Code section 2256.0115 moreover restricts the use of cash as security, limiting it to cash invested under specific provisions of chapter 2256. When the legislature has used a term in one section of a statute and excluded it in another, a court will not imply the term where it has been excluded. *See Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001) (citing *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980)); Tex. Att'y Gen. Op. No. GA-0209 (2004) at 4; *see also Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (legislative intent is determined from the entire act and not merely isolated portions). Given that sections 404.024(*l*) and 2256.0115 expressly authorize and limit the use of cash as security, it is not reasonable to read sections 404.024(a) and 2256.011 as impliedly authorizing TTSTC to accept cash as collateral in repurchase agreements. We conclude that TTSTC may not invest in a repurchase agreement under which cash could be an eligible security.

## VI.    Additional Questions

You first asked whether cash that the custodian holds for the benefit of the buyer because U.S. Treasury securities or agency securities are not available must be secured by collateral. Given our conclusion that TTSTC lacks authority to invest in a repurchase agreement under which cash could be an eligible security, we need not answer this question.

You also asked whether amendments to Government Code chapter 404, subchapters C and D, and chapter 2257, related to the collateral required to secure a deposit of public funds, would be necessary to authorize the use of cash as collateral under repurchase agreements. As we have indicated, the existing statutes do not provide this authority to the comptroller in managing the assets of TTSTC. It is for the legislature to decide whether it wishes to authorize TTSTC to invest in repurchase agreements partially secured by cash as collateral, and if so, how such legislation should be written. Accordingly, we do not address this question.

## S U M M A R Y

The Texas Comptroller of Public Accounts may not invest state funds or TexPool funds held by the Texas Treasury Safekeeping Trust Company in direct security repurchase agreement contracts that contemplate the possibility of cash as collateral.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee