

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 18, 2006

The Honorable Carole Keeton Strayhorn
Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Opinion No. GA-0469

Re: Whether Federal Reserve notes are eligible as collateral for repurchase agreements under chapters 404 and 2256 of the Government Code—Clarification of Attorney General Opinion GA-0324 (2005) (RQ-0438-GA)

Dear Comptroller Strayhorn:

In Attorney General Opinion GA-0324, we advised that chapters 404 and 2256 of the Government Code do not authorize the Texas Treasury Safekeeping Trust Company to accept cash as collateral for its repurchase agreements. *See generally* Tex. Att'y Gen. Op. No. GA-0324 (2005). You now ask us to clarify whether Federal Reserve notes would be acceptable collateral for such repurchase agreements.[1]

For background, we review Opinion GA-0324 as well as your prior request.[2] The Texas Treasury Safekeeping Trust Company ("Trust Company") manages and invests state funds and pooled funds of local political subdivisions and entities participating in the Texas Local Government Investment Pool ("TexPool"). *See id.* at 1–2.[3] The Government Code authorizes the Trust Company to invest these funds in repurchase agreements. *See id.* at 2–3.[4]

---

[1]*See* Letter from Honorable Carole Keeton Strayhorn, Comptroller of Public Accounts, to Honorable Greg Abbott, Attorney General of Texas (Jan. 27, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Letter from Timothy Mashburn, General Counsel, Comptroller of Public Accounts, to Honorable Greg Abbott, Attorney General of Texas (Nov. 17, 2004) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter RQ-0295-GA].

[3]*See also* RQ-0295-GA, *supra* note 2, at 1–2 (discussing "TexPool"); TEX. GOV'T CODE ANN. §§ 791.001–.033 (Vernon 2004 & Supp. 2006) (chapter 791, "Interlocal Cooperation Act"); 2256.001–.055 (Vernon 2000 & Supp. 2006) (chapter 2256, "Public Funds Investment Act") ("TexPool" is organized under Government Code chapters 791 and 2256.).

[4]*See also* TEX. GOV'T CODE ANN. §§ 404.024 (Vernon 2005) (authorizing investment of state funds in repurchase agreements); 404.102(a) (authorizing creation of the Trust Company to enable the Comptroller to manage
(continued...)

In a repurchase agreement, a party simultaneously sells securities and agrees to buy them back at a specified time. *See id.* at 3.[5] Although structured as a sale of securities, a repurchase agreement is essentially a collateralized loan, with the securities that are sold and repurchased serving as collateral and the difference between the initial sale price and the repurchase price representing the investor's return. *See id.*[6] Under Texas statutes, when the state is the initial purchaser the transaction is denominated a "direct security repurchase agreement." TEX. GOV'T CODE ANN. § 404.001(3) (Vernon 2005) (definition). In a direct security repurchase agreement, the party selling and repurchasing securities is generally referred to as the "counterparty." *See* Tex. Att'y Gen. Op. No. GA-0324 (2005) at 3; *see also* RQ-0295-GA, *supra* note 2, at 2.

In your prior request you explained that in a typical Trust Company repurchase agreement, the securities bought and sold are kept at a custodian bank, usually a large money-center bank in New York City. *See* RQ-0295-GA, *supra* note 2, at 2. The counterparty is generally another large money-center bank that does business in this state or a primary government securities dealer that maintains billions of dollars of securities at the custodian bank to enable it to participate in repurchase agreements with various public and private investors. *See id.* Typically the securities held by the purchaser in a repurchase agreement are to be determined and allocated nightly. *See id.* at 2–3. Each day, the counterparty provides the custodian with a list of repurchase agreements to be in place at the end of the day, and the custodian allocates the counterparty's securities to each repurchase agreement. *See id.* at 2. Occasionally, however, the counterparty may not have enough securities present at the custodian bank to fully collateralize all of the counterparty's repurchase agreements. *See id.* If this deficiency is determined late in the day, there may not be enough time for the counterparty to obtain additional securities to place with the custodian to satisfy all of the counterparty's repurchase agreements. *See id.* at 2–3. You have informed us that when such a deficiency occurs, it is customary in the banking industry for the counterparty to provide cash to make up the difference between the counterparty's securities maintained at the custodian bank and the amount necessary to satisfy the counterparty's repurchase agreements. *See id.*

In your prior request you asked whether the Trust Company may invest in a direct repurchase agreement that contemplates the possibility of cash as collateral. *See id.* at 3–4. You noted that the relevant statutes do not expressly include cash among the securities eligible as collateral for a repurchase agreement. *See id.* at 4; *see also* TEX. GOV'T CODE ANN. §§ 404.001(3)(A)–(C),

---

[4](...continued)
and invest funds, including pooled funds); 404.106(c) (the Trust Company holding funds for a particular participant has the same investment authority as the participant with respect to those funds); 2256.003(a) (Vernon 2000) (authorizing pooled investments); 2256.011 (authorizing investment of local funds in repurchase agreements).

[5]*See id.* §§ 404.001(3) (Vernon 2005) (defining "direct security repurchase agreement"); 2256.011(b) (Vernon 2000) (defining "repurchase agreement"); Jeanne L. Schroeder, *Repo Madness: The Characterization of Repurchase Agreements under the Bankruptcy Code and the U.C.C.*, 46 SYRACUSE L. REV. 999, 1004-05 (1996) (hereinafter "Schroeder").

[6]*See* Schroeder, *supra* note 5, at 1006–10 (discussing implications of characterizing a repurchase agreement as a true sale or a secured transaction).

.024 (Vernon 2005); 2256.009(a)(1) (Vernon Supp. 2006); 2256.011(a)(2) (Vernon 2000). You questioned, however, whether that omission was intended to exclude cash from serving as eligible collateral. *See* RQ-0295-GA, *supra* note 2, at 4. You suggested that the legislature's general intent was to limit the collateral eligible to secure a repurchase agreement to relatively risk-free and liquid collateral. *See id.* You observed that cash would adequately serve the same purposes as the collateral that the statutes expressly authorize. *Id.* Thus, you queried whether the pertinent statutes in chapter 404 and 2256 might be construed as permitting cash to serve as collateral in repurchase agreements. *See id.* at 4–5.

We understood you to inquire about "cash" in its usual and ordinary sense, which may include coins, paper money, checks, and demand deposits. *See* Tex. Att'y Gen. Op. No. GA-0324 (2005) at 6 (citing *Stewart v. Selder*, 473 S.W.2d 3, 8–9 (Tex. 1971); *see also* TEX. BUS. & COM. CODE ANN. § 9.102(a)(9) (Vernon Supp. 2006) ("'Cash proceeds' means proceeds that are money, checks, deposit accounts, or the like."). We observed that while the repurchase agreement provisions of chapters 404 and 2256 do not mention cash, other provisions of those chapters expressly authorize using cash for other specific purposes. *See* Tex. Att'y Gen. Op. No. GA-0324 (2005) at 6. For example, section 404.024 authorizes the Comptroller to lend securities under procedures requiring the loan to be fully secured "with cash, obligations, or a combination of cash and obligations." TEX. GOV'T CODE ANN. § 404.024(*l*) (Vernon 2005). And section 2256.0115 authorizes lending of securities as an investment provided the loan is secured by certain pledged securities, irrevocable letters of credit, or "cash invested in" certain securities and obligations, commercial paper, mutual funds, and investment pools. *Id.* § 2256.0115(b)(3)(C) (Vernon Supp. 2006). Because the legislature expressly authorized and limited the use of cash as security in sections 404.024(*l*) and 2256.0115, we determined that sections 404.024 and 2256.011 could not be read to implicitly authorize cash as eligible collateral in repurchase agreements. *See* Tex. Att'y Gen. Op. No. GA-0324 (2005) at 7. We concluded that the Trust Company may not invest state funds or TexPool funds "in direct security repurchase agreement contracts that contemplate the possibility of cash as collateral." *Id.* at 8.

You now ask us to confirm that chapters 404 and 2256 of the Government Code expressly authorize Federal Reserve notes as collateral for a repurchase agreement. *See* Request Letter, *supra* note 1, at 2. Federal Reserve notes are United States currency, legal tender for debts. *See* 31 U.S.C. § 5103 (2000). They are our nation's lawful money. *See Milam v. United States*, 524 F.2d 629, 630 (9th Cir. 1974) (Congress has delegated to the Federal Reserve the authority to "establish a national currency" and "to make that currency lawful money."); *Rothacker v. Rockwall County Cent. Appraisal Dist.*, 703 S.W.2d 235, 236–37 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (noting that Federal Reserve notes are "legal tender," valued in "dollars," and issued pursuant to Congress' authority to establish a "fiat currency"). And as money, Federal Reserve notes are one form of "cash" as we used the term in our prior opinion. *See* Tex. Att'y Gen. Op. No. GA-0324 (2005) at 6; TEX. BUS. & COM. CODE ANN. § 9.102(a)(9) (Vernon Supp. 2006) (defining "cash proceeds" to include "money"). But as you observe, under federal law, Federal Reserve notes also constitute obligations of the United States:

> The said [Federal Reserve] notes shall be obligations of the United
> States and shall be receivable by all national and member banks and

> Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

12 U.S.C. § 411 (2000); *see also* Request Letter, *supra* note 1, at 2.

Texas Government Code chapters 404 and 2256 expressly authorize categories of acceptable collateral in language similar to the phrase "obligations of the United States." Section 404.001 of the Government Code specifies the exclusive list of "securities, obligations, or participation certificates" that may serve as collateral for a state-fund repurchase agreement:

> (A)    United States government securities;
>
> (B)    direct obligations of or obligations the principal and interest of which are guaranteed by the United States; or
>
> (C)    direct obligations of or obligations guaranteed by agencies or instrumentalities of the United States government.

TEX. GOV'T CODE ANN. § 404.001(3)(A)–(C) (Vernon 2005); *see also id.* § 404.024(b)(1), (c) (authorizing the Comptroller to invest in direct security repurchase agreements). Chapter 2256 similarly provides that local funds may be invested in a repurchase agreement only if the agreement "is secured by obligations described by [Government Code] Section 2256.009(a)(1)." *Id.* § 2256.011(a)(2) (Vernon 2000). The obligations that section 2256.009(a)(1) describes are "obligations, including letters of credit, of the United States or its agencies and instrumentalities." *Id.* § 2256.009(a)(1) (Vernon Supp. 2006).

With few exceptions, unambiguous statutes are construed according to their plain language. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). When construing an unambiguous statute, we must "apply the tenet that the legislature chooses its words carefully and means what it says." *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 253 (Tex. App.—Dallas 2005, no pet.). Because Federal Reserve notes are obligations of the United States, they are eligible collateral for repurchase agreements under the plain language of sections 404.001, 404.024, 2256.009, and 2256.011 of the Government Code. *See* TEX. GOV'T CODE ANN. §§ 404.001(3)(B), .024(b) (Vernon 2005); 2256.009(a)(1) (Vernon Supp. 2006), 2256.011(a)(2) (Vernon 2000).

We reaffirm our determination in Opinion GA-0324 that, as a general proposition, sections 404.024 and 2256.011 do not authorize the Trust Company to accept cash in all its forms as collateral for repurchase agreements. *See* Tex. Att'y Gen. Op. No. GA-0324 (2005) at 8. But that opinion was overly broad, and must be modified to account for cash that constitutes an obligation of the United States, such as Federal Reserve notes. Attorney General Opinion GA-0324 (2005) is modified to the extent that it provides that cash in the form of a government obligation is not eligible as collateral for repurchase agreements.

## S U M M A R Y

Federal Reserve notes are eligible collateral for direct security repurchase agreements under sections 404.001, 404.024(b), 2256.009, and 2256.011 of the Government Code. Attorney General Opinion GA-0324 (2005) is modified to the extent that it provides that cash in the form of a government obligation is not eligible as collateral for direct security repurchase agreements.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee