Sylvan Stephen **LANG** and **Jeanne Lang Mathews, Appellants,**

v.

**SAN ANTONIO AREA FOUNDATION, Appellee.**

No. 04–98–00963–CV.

Court of Appeals of Texas, San Antonio.

Aug. 25, 1999.

Rehearing Overruled Sept. 21, 1999.

S. Neill Boldrick, Jr., Cauthorn Hale Hornberger Fuller Sheehan & Becker, San Antonio, Royal B. Lea, III, Bingham & Lea, P.C., San Antonio, for Appellants.

Hubert W. Green, The Kleberg Law Firm, P.C., San Antonio, Richard E. Goldsmith, Matthews & Branscomb, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

Sylvan Stephen Lang and Jeanne Lang Mathews appeal an adverse declaratory judgment concerning the construction of the will of their aunt, Ruth Lang, deceased. The central issue of this case is whether the trial court should have considered extrinsic evidence when construing the meaning of the words chosen by the testatrix to describe property so devised. We hold that the court erred in failing to consider such evidence. We reverse the summary judgment and remand this case for trial.

### BACKGROUND

Ruth Lang bequeathed her 25% undivided interest in a real estate development project located on Prue Road to Sylvan Stephen Lang and Jeanne Lang Mathews, her niece and nephew. However, the probate court, on a motion for summary judgment, ruled that the promissory notes, collections from those notes, and net profit interests, with an estimated value of $250,000, generated in the course of developing the property, passed to appellee, the San Antonio Area Foundation, as the beneficiary of the residuary clause.

The Langs assert there is a fact issue as to Ruth Lang's intent concerning this bequest. They argue that Ruth Lang thought of the land, the notes, and profits as one investment package, so that when she devised the "Prue Road Property" to appellants, she intended to give them the entire package. The probate court held certain extrinsic evidence tending to establish this construction inadmissible and granted the summary judgment. The Foundation states that the court based its decision on the doctrine of ademption, which operates to extinguish a gift of property which is sold before death. The Foundation also points to the meaning of the term "real property" as defined in the probate code, and states that this term is well settled in law and is not ambiguous.

As there is no ambiguity within the four corners of the will, the Foundation argues that the court was correct in refusing to look outside the will to determine the testatrix's intent. Following an evidentiary hearing, at which the court heard three witnesses, it denied both sides' request for recovery of their attorneys' fees.

### THE STANDARD OF REVIEW

We review the lower court's grant of summary judgment under well established summary judgment principles. The grounds for the summary judgment must be expressed in the motion itself. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997); *McConnell v. Southside Ind. School Dist.*, 858 S.W.2d 337, 338–42 (Tex.1993). The moving party bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, we take as true all evidence favoring the non-movant. *See Nixon*, 690 S.W.2d at 548–49. Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *See id.; Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

### RULES OF CONSTRUCTION

■ When construing a will, the central focus of the court is on the testatrix's intent. *See Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 888 (1960). We glean that unique intention by looking to the will as a whole as expressed within the four corners of the instrument. *See Perfect Union Lodge No. 10 v. Interfirst Bank*, 748 S.W.2d 218, 220 (Tex.1988). Our objective is not to determine what the testatrix intended to write, but to discern *her* meaning from the words *she* chose. *See Shriner's Hosp. for Crippled Children of Texas v. Stahl*, 610 S.W.2d 147, 151 (Tex.1980). To meet this objective, a court may consult extrinsic evidence to assist it in determining the testatrix's meaning of the words set forth in her will. *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971); *Huffman*, 339 S.W.2d at 888.

### EXTRINSIC EVIDENCE

■ The central issue in this appeal is whether consideration of extrinsic evidence is appropriate when the testatrix used words which have a settled, legal meaning. The pertinent provision of the will reads:

I devise and bequeath the real property and oil and gas real properties in my estate located in Frio County, Texas and Prue Road in San Antonio, Texas one-half (½) to my nephew, SYLVAN STEPHEN LANG, and one-half (½) to my niece JEANNE LANG MATTHEWS [sic], if either shall survive my death by one hundred twenty (120) days. In the event only one or neither of said beneficiaries so survives me, said non-surviving beneficiary's share shall be distributed to his or her issue, by right of representation.

The Langs contend that the words "real property ... in my estate located in ... Prue Road" reflect the terms the Lang family has used for more than 50 years when discussing the real estate development project they called "Prue Road Property" or just plain "Prue Road."[1] The Langs sought to demonstrate this and,

1. The Langs' father first acquired an interest in the original 219 acres in Northwest Bexar County from his mother and other ancestors in 1941, and, according to Sylvan Stephen Lang's affidavit, the "land and all the various other assets held in connection with it from time to time, such as notes, contract interests, net profits, net profits agreements and accounts, all together was considered as 'one ball of wax' and came to be referred to in the family and by others who had anything to do with it simply as 'the Prue Road Real Property,' 'Prue Road Property,' 'Prue Road' or similar terms through all the permutations that it went through down to the present time."

thus, defeat the Foundation's motion for summary judgment, by attaching several affidavits from those familiar with the family's correspondence and discussions about the Prue Road investment, and several letters drafted by Sylvan Stephen Lang, as managing partner, to his aunt and other family investors in the project. Whether or not the phraseology used is patently or latently ambiguous, they argue, it is always proper for the court to consider the circumstances surrounding the use of these terms when construing the meaning of the words the testatrix used in her will. We agree.

■ When determining the intent of the testatrix, a court "may always receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the Court to place itself in his position at the time." *Stewart v. Selder,* 473 S.W.2d at 7; *see Knesek v. Witte,* 715 S.W.2d 192, 196 (Tex.App.Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Anderson v. Dubel,* 580 S.W.2d 404, 408 (Tex.Civ.App.-San Antonio 1979, writ ref'd n.r.e.).

■ The Foundation relies on the principle that extrinsic evidence is generally inadmissible where no ambiguity is evident in the document under construction. While that principle holds true in bi-lateral contractual disputes, *see, e.g., National Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 521 (Tex.1995), it does not guide us in determining the unilateral intent of a testatrix, *see Stewart,* 473 S.W.2d at 7. Even when all agree that the will is unambiguous, the court may turn to extrinsic evidence of surrounding circumstances to ascertain the meaning of the words used in the will. *See Kelley v.*

*Marlin,* 714 S.W.2d 303, 305 (Tex.1986); *see also* A. Leopold & G. Beyer, 10 Texas Law of Wills Practice, § 47.7, p. 240 (Texas Practice Series, West 1992 & 1998 Supp.) (stating that, based on *Stewart,* "the Texas Supreme Court [has] cleared the way for the reception of extrinsic evidence ... without regard to ... whether the word or phrase [in dispute] is ambiguous").

■ Thus, when considering a motion for summary judgment, if the responding party brings forth any evidence that supports a reasonable construction of the intent of the testatrix which differs from that urged by the movant, summary judgment is inappropriate. Here, the term "my real property ... in ... Prue Road" could reasonably refer to the land alone. But, in light of the extrinsic evidence offered, it is just as reasonable to construe this phrase as that bundle of assets that comprised a long-time, ongoing family business investment.

■ The extrinsic evidence offered here did not contradict any language in the will, nor did it refer to something outside of or independent of the words used in the will. *See Najvar v. Vasek,* 564 S.W.2d 202, 206 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (holding extrinsic evidence contradicting language in will inadmissible when will is unambiguous). Rather, the affidavits and historical correspondence regarding this investment property refer to the circumstances which the testatrix routinely confronted as an investor and shed light on the meaning or sense of the words actually used in her will. *See Huffman,* 339 S.W.2d at 888. As appellants point out in their brief, a review of the evidence submitted to the court without objection raises a fact issue.[2] Thus, regardless of

---

2. The affidavit of Sylvan Stephen Lang states that Ruth Lang and the Lang family referred to the land, the development of the land, the proceeds and profits from sales and development of the land, and various promissory notes associated with the land, as the "Property," the "Prue Road Property" and the "Prue Road Property Development." Both the Lang and Hoyer affidavits demonstrate Ruth Lang's earlier offer to gift her interest in the Prue Road investment to her niece and nephew. In addition, all of the promissory notes and contracts associated with or involving the Prue Road Development were identi-

whether the will was ambiguous, evidence submitted by the Langs raised a fact issue requiring a determination by a jury. As to the eight objections to other extrinsic evidence offered to clarify Ruth Lang's intent, we need not deliberate over their propriety as we have already ruled that the summary judgment was improper due to the existence of a fact question. The appellant's first issue is sustained.

## ADEMPTION

■■■■■ The doctrine of ademption directs a court to extinguish a specific bequest if the testatrix has transferred or alienated the asset in question prior to her death. *See Stahl,* 610 S.W.2d at 148. This result occurs because the testatrix no longer owns the property, it is not in her estate upon her death. The Foundation argues that when individual lots in the Prue Road Development were sold to homeowners that portion of the asset was adeemed and the resulting notes and proceeds of the sale, not being specifically included in the bequest to the Langs, should go to the residuary beneficiary. The application of this principle to the individual components of a real estate development or other ongoing business investment simply does not make sense where the nature of the business itself places assets in constant flux, changing their character in the course of normal business operations. The value of the investment has not disappeared from the estate, it simply changes form from time to time. In this context and in light of the extrinsic evidence admitted, the testatrix's use of the phrase "real property" could reasonably be construed to mean "real estate development"[3] or "business interests in real property" she identified as "Prue Road." *See Davis v. Shanks,* 898 S.W.2d 285, 286 (Tex.1995) (when term in

will is capable of more than one meaning, court should consider extrinsic evidence of testator's intent). While the *Davis* case did not concern an ademption argument, we find it persuasive when considering whether Mrs. Lang's employment of the phrase "real property ... in ... Prue Road" referred to specific lots in her possession at the time of her death, as proposed by the Foundation, or to the entire business enterprise, as the Langs suggest. The phrase, in light of the Langs' evidence to which appellee did not object in response to the motion for summary judgment, exposes a latent ambiguity in the will. *See Matter of Estate of Brown,* 922 S.W.2d 605, 609 (Tex.App.—Texarkana 1996, no writ).

Had the will devised an asset that was not in the nature of a business investment such as a real estate development which, by the very nature of its business has buying, selling, and financing components, the doctrine of ademption might very well apply here. *See Matter of Estate of Brown,* 922 S.W.2d 605, 607–08 (Tex.App.-Texarkana 1996, no writ). In *Brown,* the devise was clearly specific, describing the testator's home located at #19 Holly Ridge, Texarkana, Texas. At the time of death, the testator had sold the Holly Ridge residence and acquired another home at a different location which was not mentioned in the will. The court distinguished its holding from that in *Welch v. Straach,* where the devise of the home referred to "the homestead upon which we are living," and included no specific physical description of the real property. The court construed this to mean that the testator intended to bequeath whatever home he lived in at the time of his death. *See Brown,* 922 S.W.2d at 608; *Welch,* 518 S.W.2d 862, 868 (Tex.Civ.App.-Waco),

---

fied in the documents themselves as "Prue Road." The correspondence among the investors consistently identified the subject matter of the letters by these same references.

**3.** The Foundation, itself, describes the disputed interest in property in its introductory

paragraph to *its* memorandum supporting the motion for summary judgment as: "The deceased owned a 25% undivided interest in 219 acres of land *intended to be sold for residential real estate development.*"

*rev'd on other grounds,* 531 S.W.2d 319 (Tex.1975). In this case, the physical description of the real estate involved is somewhat general and somewhat specific. It locates the real estate development "in ... Prue Road" but does not give more specific descriptions of lots or other aspects of the business development. This, in itself is ambiguous, and certainly not specific enough to invoke the doctrine of ademption in a summary judgment proceeding.

### PROBATE CODE § 58(c)

The Foundation, basing its motion for summary judgment on the meaning of the term "real property" used in the will, listed four grounds: (1) that the term "refers to the *land* located on Prue Road," and that the disputed property, the promissory notes, and cash connected to the development are personal property; (2) that the term is not ambiguous, so that its construction is a matter of law; (3) that the lots sold after execution of the will are subject to the doctrine of ademption; and (4) that the notes and cash, not mentioned in any specific bequest, pass to the Foundation as part of the residuary estate. After the Langs filed their response and one day before the hearing, the Foundation filed its supporting memorandum citing to Section 58(c) of the Texas Probate Code.[4]

Section 58(c) states in pertinent part: "A devise of real property does not include any personal property located on or associated with the real property or any contents of personal property located on the real property unless the will directs that the personal property or contents are included in the devise." TEX. PROBATE CODE § 58(c) (Vernon Supp.1999). This section has not been previously construed. Respected legal commentators, however, advise that "to the extent that either a statute or established rule of decision at-

tributes a certain meaning to particular words, that meaning must be accepted." A. LEOPOLD & G. BEYER, 10 TEXAS LAW OF WILLS PRACTICE, § 47.3, p. 209–10 (Texas Practice Series, West 1992) (quoting from T. ATKINSON, LAW OF WILLS § 146 (2d ed.1953)).

Nevertheless, the application of the statutory definition to two of the words used in this instance does not resolve the ambiguities inherent in this particular devise. The will states: "I devise and bequeath the real property and oil and gas real properties in my estate located in Frio County, Texas and Prue Road in San Antonio, Texas ..." The references to "real property and oil and gas real properties in my estate located in Frio County, Texas" could reasonably refer to one package of the bequest. In other words, the use of the term "real property" may only refer to the Frio County assets. The record before us is not clear as to whether the estate contained both real property and oil and gas real properties in Frio County. Nor is it clear that the decedent owned and could, therefore, have devised both surface and mineral interests in the Prue Road development. Was the testatrix attempting to devise her real property in Frio County and her oil and gas real properties in Prue Road, or vice versa? It seems more reasonable, in light of extrinsic evidence, that the decedent in stating, "I devise and bequeath ... Prue Road," was referring to her interest in the entire real estate development project that had been a family-owned business investment for more than 50 years. If the words "real property and oil and gas real properties" modify only her Frio County assets, then Section 58(c) is not relevant to this dispute. To apply the statutory meaning in the manner the Foundation suggests, forces the court to change the words "located in,"

---

4. In light of our determination that the summary judgment must be reversed, we do not reach the issue of whether the trial court erred in considering the Foundation's memorandum filed one day before the hearing. We are well aware of the standard local practice of filing a memorandum shortly before or at the hearing itself, provided it merely amplifies the grounds clearly stated in the motion itself.

which the testatrix actually used, to "located on or near" when applying the reference to Prue Road. The testator may not have intended the words "located in" to reach the phrase "Prue Road" at all.

### ATTORNEYS' FEES

■ In granting summary judgment, the trial court denied both sides their applications for an award of attorneys' fees. An award or denial of attorney's fees falls well within the discretion of the trial court. *See Bocquet v. Herring,* 972 S.W.2d 19 (Tex.1998). In light of our decision to reverse the summary judgment, the trial court shall have further opportunity to reconsider the issue of attorneys' fees after trial on the merits.

The summary judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.