Case No. 04-15-00271-CV

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | IN THE COURT OF APPEALS |
| ESTATE OF JOHHNIE MAE KING | ) | |
| | ) | |
| ROWLAND J. MARTIN | ) | |
| Appellant | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| v. | ) | |
| | ) | |
| BEXAR COUNTY, et al. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## APPELLANT'S UNOPPOSED MOTION TO ABATE
## AND FOR LEAVE TO FILE SECOND AMENDED BRIEF

**TO THE HONORABLE FOURTH DISTRICT COURT OF APPEALS:**

NOW COMES Appellant, Rowland J. Martin, Administrator for the Estate of King, and files this, his "Appellant's Unopposed Motion To Abate And For Leave To File Second Amended Brief," requesting the Court to abate an issue about Attorney Edward Bravenec and his firm to allow ancillary proceedings and for leave to amend cite additional authority on the need for continued administration in relation to claims of liability asserted against him, in support of which the following is shown:

### STATEMENT OF THE CASE

Appellant moves the Court to abate proceedings until further notice and for leave to amend on an issue relating to whether the Texas Supreme Court's holding in *San Antonio Area Foundation v. Lang*, 2000 WL 1675984 (Tex. 2000) supports a claim for liability against Attorney Edward Bravenec. See legal authority and lien declarations in APPENDIX. The requested abatement aids the Court's supervisory jurisdiction to expedite a resolution of the controversy with the Bexar County Appraisal Authorities, and is permissible according to the law of the case doctrine, and promotes judicial economy by minimizing unnecessary

1

expenditures of resources by the Court and the interested parties in Case No. 04-15-00271-CV. Appellant has diligently conferred with opposing counsel for the Bexar County appraisal authorities and has been informed that there is no opposition to the motion insofar as it pertains to a claim for liability for trespass to real chattels by Bravenec and his firm. The primary effect of the proposed abatement is to afford the parties an opportunity to supplement the record in the Probate Court and in ancillary proceedings with an eye towards exploring alternatives for a voluntary settlement of competing claims. Ex parte Shaffer, 649 S.W.2d 300 (Tex. 1983) (vacating prior restraints abridging pro se administrator's fundamental rights).

## THE LAW OF THE CASE DOCTRINE

The law of the case doctrine has been defined by the Texas Supreme Court as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages, but does not absolutely bar reconsideration of the same issue on a subsequent appeal after a party amends his pleadings and adds a new cause of action. Barranza Family Partnership v. Levitas, Case No. 13-07-00470-CV, 2009 Tex. App. LEXIS 1707 (Tex. App. - Corpus Christi, 2009, pet. den'd) (applying law of the case doctrine to uphold estate administrator's right of re-entry); cf., Martin v. Bravenec, et al, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015). On the evolving facts of this case, it confers upon Appellant an absolute privilege to engage in judicial communications concerning his direct interest in the subject property. As indicated by the materials attached, this second appeal involving issues about Edward Bravenec involves an intervening change in a prior judgment issued by the U.S. Court of Appeals for the Fifth Circuit, an intervening lien declaration, and a trespass to chattel issue that did not come before the Court in the first appeal. See e.g., "Third Party Purchase Money Lien Declaration" citing Bexar

2

County Deed Records, Vol. 10406 Page 1607 (describing the subject property as "Lots 1, 2, and 3, Block 50, new City Block 8806, LOS ANGELES HEIGHTS").

It is evidently permissible in the current state of the record for the parties to supplement the record of proceedings in the Probate Court and in the affected ancillary courts to reflect new developments. Chale Garza Investments, Inc. v. Madaria, 931 S.W.2d 597, 600 (Tex. App.--San Antonio 1996, writ denied) (absolute privilege for lis pendens filing); McKaskey v. McCall, 236 S.W. 432 (Tex. App. – El Paso 1920) (lis pendens expunction on defective rationale is fundamental error). Given the current state of the record, Appellant's lien declaration constitutes an authorized communication relating to his property interests in the subject property of the dispute with Bravenec.[1] The declaration operates in furtherance of ongoing proceedings in Case 15-0541 on the Texas Supreme Court, Case No. 04-15-00271-CV in this Court and in Case No. 14-50093 in the Fifth Circuit, as well as other on-going proceedings in Probate Case No. 2001-PC-1263 in Bexar County Probate Court #1, Case No. 2014-CI-07644 in the 285th District Court, and Case No. 2015-CI-04779 in the 150th District Court, respectively. As to all the above referenced proceedings, Appellant asserts that he is the beneficiary of an absolute privilege under Chale Garza Investments, Id., that his lien was attached to real property encumbered by a security interest granted in expectation of legal services for the benefit of the King estate, Archer v. Griffith, 390 S.W. 735 (Tex. 1965), and that his continuing lien interests in the subject property is not governed by the collateral interest doctrine followed in Flores v. Haberman, 915 S.W.2d 477, 478 (Tex. 1995) (per curiam) (orig. proceeding).

---

[1]    See also, Barras v. Barras, 396 S.W.3d 154 (Tex. App. 2013), reh'g overruled (Apr. 11, 2013), review denied (Aug. 30, 2013) (purchase money claim); Long Beach Mortgage Company v. Evans, 284 S.W.3d 406 (Tex.App.-Dallas 2009, cert denied) (awarding property to lis pendent claimant with purchase money interest); Cohrs v. Scott, 338 S.W. 2d 127, 130 (Tex. 1960) (payment of purchase money for acquisition of land by another supports remedy of resulting trust); and Johnson v. Wood, 157 S.W. 2d 146 (Tex. 1941).

## ARGUMENT AND AUTHORITIES

A.    **SAAF Supports The Conclusion That The Chose Of Action Embodied By Probate Case # 2001-PC-1263, And The Purchase Money Lien Interest Expended Inadvertently For The Benefit Of The Estate, Are Real Chattel Interests That Were Subjected To Interference By Bravenec's Unilateral Abandonment Of The Probate Case In 2005.**

One of several reasons there is a need for proceedings in the probate court results from interference with estate administration that began during the attorney client relationship with against Bravenec and his firm. In re Estate of Valdez, 406 S.W.3d 228, 233 (Tex. App.—San Antonio 2013, pet. denied); Omnibus Int'l, Inc. v. AT & T, Inc., 111 S.W.3d 818, 826 (Tex.App.-Dallas 2003, pet. granted, remanded by agreement) (trespass to chattels case). The Court said in Valdez that the elements of action for trespass to chattel are "(1) that an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse." Id. Appellant submits that the law applied in SAAF, and by the Fifth Circuit appeal in Martin v. Bravenec, et al, Case No. 14-50093, 2015 WL 5752439 (5th Cir, October 2, 2015), and in DTND Sierra Investments v. HSBD Bank U.S.A., Case No. 14-51142, 2015 WL 5332725 (5th Cir., 2015), substantiate the legal basis for the proposed abatement and remand.

In SAAF, the Texas Supreme Court notes that "[t]he Probate Code defines personal property as 'interests in goods, money, choses in action, evidence of debts, and chattels real' ... Promissory notes, net-profit agreements, and cash are personal property, not real property." Id. (citing Tex. Probate Code § 58(c) (Vernon Supp. 1999)). Appellant asserts that Probate Case No. 2001-PC-1263 is a chose in action of which he is the equitable owner, and that his lien declaration and perfected notice of lis pendens encumbering the property known as 1216 West Ave., in San Antonio Texas are evidence of debt in the nature of a promissory note. In this

4

regard, SAAF substantiates a need for administration to prosecute claims for tort liability and turnover relief against Bravenec and his contracting parties.

In SAAF, the Texas Supreme Court construed Section 58(c) for the first time in a case where a Testatrix devised certain real property to a niece and nephew, and where the the probate court initially ruled that assets related to that real property, such as promissory notes, collections, and net profit interests, were not encompassed by the term "real property" and thus they passed to the residuary beneficiary. The probate court refused to admit extrinsic evidence showing that Testatrix thought of the land, the notes, and the profits as one "investment package" which she meant to pass by the devise to Niece and Nephew. Section 58 (c ) stated in pertinent part as follows: "A devise of real property does not include any personal property located on or associated with the real property or any contents of personal property located on the real property unless the will directs that the personal property or contents are included in the devise." Tex. Probate Code § 58(c) (Vernon Supp. 1999).

On appeal, this court reversed the probate court in **Lang v. San Antonio Area Foundation,** 5 S.W.3d 738 (Tex. App.—San Antonio 1999), and held instead that the probate court should have considered the extrinsic evidence because the evidence created a fact issue regarding Testatrix's intent. However, the Supreme Court of Texas reversed in a unanimous opinion and reinstated the probate court's judgment in favor of the residuary beneficiary. The Supreme Court recognized that the term "real property" has a settled legal meaning and that a reviewing court cannot look beyond the terms of the will to find Testatrix's intent. The SAAF decision implies that a duty exists on the part of counsel to oppose a cloud on title to real property of an estate where the plaintiff tax authorities have designated personal property owners as defendants in a suit for collection of ad valorem taxes assessed against real property of a pending estate.

5

**B.** **SAAF Supports An Attribution Of Intent To Harm Real Chattel Interests Stemming From Bravenec's Retention Of In Kind Compensation In Excess Of The Quantum Merit Value Of His Services And His Subsequent Prosecution Of A Motion To Expunge Lis Pendens That Was Adverse To The Estate He Once Represented.**

Regarding the second element, Section 58 resolves the definition of real property in favor of a conclusion of law that personal property is categorically excluded from the delegation of authority to impose ad valorem taxes on real property. Bravenec's original undocumented withdrawal from the Probate Case supports an attribution of intentionality and causation of harm. At common law, the rule was that "one who intentionally intermeddles with another's chattel is subject to liability ... if his intermeddling is harmful to the possessor's materially valuable interest in the value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interests of the possessor is affected." Restatement (Second) Torts, p. 218. It is now recognized that trespass to chattels is one of the "other legal theories might be employed concerning the misappropriation of or interference with intangibles." Thrifty-Tel, Inc., v. Bezenek, 46 Cal. App. 4th 1559, 1567 (Cal.).

Appellant submits that Bravenec caused intentional harmful interference to the King estate and to the Appellant on two grounds. Bravenec recklessly endangered the estate's chose in action in Probate Case No. 2001-PC-1263 through the failure of his firm to challenge the tax authorities' standing to prosecute tax suits against heirs of a pending estate from 2003 to 2005 and his abrupt abandonment of the attorney client relationship in October 2005. He has also recklessly endangered Appellant's purchase money interests by converting security interests that were granted in expectation of legal service into unearned compensation in a post-petition foreclosure transaction in October of 2006, and by subverting Appellant's absolute privilege to recover the subject property through lis pendens expunction proceedings directed at the estate.

6

For the same reason that extrinsic evidence was disallowed in SAAF as offered to demonstrate that a gift of real property includes personal property, extrinsic evidence cannot enable him to avoid culpability for his failure to abate clouds on title to estate property resulting from unopposed tax suits against the heirs:

> Real property is defined as "land, and generally whatever is erected or growing upon or affixed to land." Chastain v. Koonce, 700 S.W.2d 579, 584 (Tex.1985) (Gonzalez, J., concurring) (quoting black's Law Dictionary 1096 (5th ed.1979)). The Probate Code defines "real property" as including "estates and interests in land, corporeal or incorporeal, legal or equitable, other than chattels real." Tex.Prob.Code § 3(dd). Personal property is defined broadly to include everything that is subject to ownership not falling under the definition of real estate. Erwin v. Steele, 228 S.W.2d 882, 885 (Tex.Civ.App.-Dallas 1950, writ ref'd n.r.e.); see also black's Law Dictionary 1233 (7th ed.1999)... Thus, because real property has a settled legal meaning, we need not look beyond the terms of the will to find Ruth's intent.

> This conclusion is supported by section 58(c) of the Probate Code, which mandates that "[a] devise of real property does not include any personal property located on or associated with the real property, unless the will directs that the personal property . [is] included in the devise." Tex. Prob.Code § 58(c). Because the real estate lien notes and net-profit agreements ... are personal property, they would not pass with the devise of real property unless [the Testatrix] otherwise specifically directed in her will ...

SAAF, Id. (bracketed language added). In short, SAAF implies that the tax litigation was coram non judice because "the settled meaning of real property" and "the directions of the Probate Code" remain constant regardless of extrinsic evidence about the circumstances of the estate. Id.

Further, the Supreme Court specifically noted that, prior to San Antonio Area Foundation, Section 58 of the Probate Court had not been previously construed, and that "Respected legal commentators ... advise that 'to the extent that either a statute or established rule of decision attributes a certain meaning to particular words, that meaning must be accepted.' A. Leopold G. Beyer, 10 Texas Law of Wills Practice, § 47.3, p. 209-10 (Texas Practice Series, West 1992) (quoting from T. Atkinson, Law of Wills § 146 (2d ed. 1953))." Id. Here as in

7

SAAF, the statutory provision that took effect on January 1, 2014 attributes a meaning to the term real property which renders Bravenec and his firm putatively liable for acts of reckless endangerment that are "inconsistent with long-standing Texas jurisprudence." SAAF, Id.

## C. A Need For Administration Exists So The Probate Court And Affected Ancillary Courts Can Inquire Into Whether Liability Should Be Imposed For The Interferences With Estate Administration That Bravenec And Those In Privity With Him Have Caused.

Regarding the third element, Appellant relies on the attached material to support his denial that there is any just cause or legal excuse for Bravenec to evade liability much less to retain ownership of real property which he took subject to a second lien chain of title that is executory in nature, Johnson, Id., and in contemplation of legal services to the client estate and its administrator that he never performed, Archer, Id.

Applying governing law to the factor of just cause, the law of the case doctrine in Barranza authorizes the Court to disregard its past interlocutory findings about the probate court proceedings in light of intervening changes in the governing law reflected by the Fifth Circuit's findings in Martin v. Braevnec, et al, Case No. 14-50093 and DTND Sierra Investments, Id.[2] On October 2, 2015, the Fifth Circuit issued a Memorandum Opinion that finds Bravenec at fault for prosecuting a federal court motion for contempt that was previously referenced in Case No. 04-14-00483-CV and concludes as a matter of law that the federal district court abused its discretion and violated due process requirements. As a general matter, the Fifth Circuit established that the two federal court lis pendens filings cited in Bravenec's tort liability case operated in furtherance

---

[2] The Court has previously stated, for example, that "[w]ith regard to the occurrence of an act of interference, the pleadings alleged Martin had "admitted, in open court, his intention to obstruct [the] sale of the [P]roperty," and evidence was introduced at the hearing of a series of willful, intentional acts taken by Martin to interfere with the appellees' ability to sell the Property, including the filing of at least four prior lis pendens that were cancelled and expunged by various courts. The evidence also included the Perfected Notice of Lis Pendens filed by Martin in the underlying cause in response to which Bravenec filed his motion for contempt alleging Martin had violated the trial court's temporary restraining order …" Memorandum Opinion in Case No, -04-14-00483-CV, Id.

8

on on-going judicial proceedings at the time of their filing. The Fifth Circuit concluded that the Rule 11 sanctions imposed by the federal district court constituted an abuse of discretion and deprived due process as applied to punish the filing of lis pendens notices. Further, the Fifth Circuit's evidentiary record on the second issue, concludes that "Bravenec did not comply with [Rule 11's] safe harbor provision" due to his reliance on a pleading that was itself unsupported, substantiates the contrary inference that Bravenec's tortious interference case essentially continues a course of action involving de facto abuses of process under Rule 11 in the federal district court. Memorandum Opinion in Case No. 14-50093, at p. 4 – 6.

DTND Sierra Investments, Id. affirms sanctions for meritless litigation in a fact situation that directly parallels tactics that Bravenec used to the detriment of the Appellant and the estate in 2006. The Fifth Circuit described the meritless litigation in DTND as follows:

> DTND engaged in a scheme to delay foreclosures by petitioning for temporary restraining orders in state court and dismissing those claims upon removal. DTND was also party to four materially identical actions that were dismissed on the merits. This shows that DTND had knowledge its claims were meritless but nevertheless filed to delay foreclosure. The district court's findings that DTND's claims were meritless and intended to harass or delay were reasonable and proper.

Id. at p. 5. Here, it is undisputed that Bravenec petitioned the 57th District Court for a temporary restraining order against first lien servicer Reliant Financial, Inc. in a state court trespass to try title case. He foreclosed an inferior second lien on terms that hindered Appellant's interests both as a purchase money creditor and as a beneficiary of an undischarged attorney client relationship, He then promptly dismissed the trespass to title claim upon securing a release of liability from defendant Reliant Financial, Inc., before Appellant could intervene to prosecute requests for reconsideration. Bravenec later participated in at least one materially similar pattern of conduct in which this Court upheld sanctions in 2013. Bravenec v. Flores, Case No. 04-11-00444-CV 2013 WL 1149418 (Tex. App. - San Antonio 2013) (improper purpose). This pattern of events

9

shows that Bravenec knew or should have known before the end of 2013 that his litigation tactics were improper. Nonetheless, he moved the federal district court to cite Appellant for criminal contempt and incarceration. Upon failing to accomplish his improper purpose in that forum, he then moved the Probate Court for expunction relief citing the outcome of a judgment the Fifth Circuit has now vacated. Unlike the offending attorneys in DTND, Bravenec was judicially undischarged as an attorney of record in the probate case at all times until March 19, 2014 and this omission repeatedly disrupted the machinery of various curts by confounding the law of the case that should have been applied to him. Thus, there is good cause to argue for plain error by the federal district court under DTND Sierra Investments, Id.

Regarding legal excuse, Bravenec's testimony at the hearing in the 285th District Court on July 9, 2014 suggests that he does not comprehend that the law permits a third party to assert a purchase money lien interest against the subject property of a purchase that the third party's funding enabled. Vol 2 (Case No. 04-14-00483-CV) RR 51 (line 17) ("I don't know what this is, sir."). This testimony flies in the face of the rule against impairment of contractual obligations:

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not [ ] know what it contained. If this were permitted, contracts would not be worth the paper on which they are written ... [He] must stand by the words of his contract; and, if he will not [ ] he alone is responsible for his omission.

Upton v. Tribilcock, 91 U.S. 45, 50 (1875) (brackets added). Bravenec knew or should have known that the controversy here is about competing rights to quiet title relief, and that a suit to quiet title in intended to "enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." Thomson v. Locke, 1 S.W.112, 115 (Tex. 1886)). Appellant requests an abatement to supplement the probate court and requests leave to amend pleadings to cite SAAF, Id., and other controlling authority on third party purchase money liens in Flanagan v. Cushman, 48 Tex. 241 , 1877 WL 8677 (1877).

10

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled.

Dated: October 14, 2015

Respectfully Submitted,

_Rowland J. Martin_
Rowland J. Martin
951 Lombrano
San Antonio,Tx 78207
(210) 323-3849

## CERTIFICATE OF SERVICE

I delivered a copy of this, "Appellant's Unopposed Motion To Sever And To Remand," to Attorney Elizabeth Conry Davidson via email c/o Bexar Appraisal District, 411 S. Frio, San Antonio, Texas, 78204 on October 14, 2015.

Dated: October 15, 2015

_Rowland J. Martin_
Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Attorney Elizabeth Conry Davidson via email on or about September 3, 2015 about the substance of the abatement proposal in the foregoing motion and she advised in her response that there is no opposition to the motion, nor is there opposition to leave to amend.

_Rowland J. Martin_
Rowland J. Martin

11

# APPENDIX

A.  Martin v. Bravenec, et al, Case No. 14-50093, 2015 WL 5752439 (5th Cir, October 2, 2015)

B.  THIRD PARTY PURCHASE MONEY VENDOR'S LIEN

C.  ADMINISTRATOR'S CLASS 2 LIEN PURSUANT TO THE TEXAS ESTATES CODE

# A

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2015

Lyle W. Cayce
Clerk

No. 14-50093
Summary Calendar

ROWLAND J. MARTIN, JR., Successor in Interest to Moroco Ventures L.L.C.,

Plaintiff-Appellant

v.

EDWARD BRAVENEC, Esquire; LAW OFFICE OF MCKNIGHT AND BRAVENEC; 1216 WEST AVENUE, INCORPORATED,

Defendants-Appellees

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-414

Before JOLLY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Rowland J. Martin, Jr., proceeding pro se, appeals orders of the district court awarding attorney's fees to Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Avenue, Incorporated, under FED. R. CIV. P. 11, and striking his pleadings opposing an award of fees.[1]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Avenue, Incorporated will be referred to collectively as Bravenec.

In 2010, Martin filed a pro se complaint against Bravenec and other entities alleging multiple causes of action predicated upon a foreclosure dispute. Bravenec filed a motion for summary judgment that included a request for sanctions. The district court granted summary judgment to Bravenec but declined to impose the sanctions requested because Bravenec failed to comply with the procedural requirements of FED. R. CIV. P. 11(c)(2). However, the district court sua sponte ordered Martin to show cause why financial sanctions should not be imposed. Believing that Martin failed to comply with the show cause order, the district court entered an order directing the clerk of court not to accept additional motions or complaints from Martin without the court's permission. On appeal, we affirmed the entry of summary judgment but did not address the issue of sanctions, as it was not before the court. *See Martin v. Grehn*, 546 F. App'x 415 (5th Cir. 2013).

After this Court's opinion issued, Bravenec moved the district court to expunge a lis pendens lien Martin filed that alleged that the disputed property was subject to ongoing litigation in federal court. The district court granted the motion, and the lien was expunged. Because this Court had not issued the mandate in Martin's appeal, he filed a new lis pendens lien asserting anew that the disputed property was subject to ongoing litigation in federal court, which lead Bravenec to file a motion for sanctions under FED. R. CIV. P. 11 and TEX. R. CIV. P. 65. Bravenec asked the district court to impose a term of confinement or, alternatively, award attorney's fees in the amount of $10,000. Without holding a hearing or ordering a response from Martin, the district court entered an order on December 5, 2013, denying the request for confinement and granting the request for attorney's fees. The district court concluded that it was appropriate to award Bravenec attorney's fees because the district court previously found that Martin violated FED. R. CIV. P. 11(b)(1),

(2) and Martin failed to respond to the district court's show cause order. However, rather than grant Bravenec $10,000 as requested, the district court ordered Bravenec to file a supplemental motion setting forth the fees actually incurred during the litigation. Upon receipt of Bravenec's supplemental motion, the district court determined that Bravenec incurred $7,710 in fees and entered an order on December 27, 2014, awarding that amount to Bravenec. Martin attempted to object to the original and supplemental motions for attorney's fees on two separate occasions. However, the first set of pleadings was entered on the docket after the district court's December 5, 2013, order issued, and the district court ordered the second set of pleadings stricken on December 30, 2013, on the grounds that the pleadings violated the no filing sanction previously imposed.

On January 27, 2014, Martin noticed his intention to appeal the district court's orders granting attorney's fees, affixing the amount of fees to be awarded, and striking his objections. Martin makes two arguments on appeal. First, the district court plainly erred in not exercising supplemental jurisdiction under *Sampliner v. Motion Picture Patents Co.*, 255 F. 242 (2d Cir. 1918), *rev'd on other grounds*, 254 U.S. 233 (1920), and applying Texas law to adjudicate his claims against Bravenec. Second, the district court abused its discretion in awarding Bravenec attorney's fees under Rule 11.

This Court exercises jurisdiction under 28 U.S.C. § 1291, which provides for an appeal from final orders of the district court. *See Southern Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 130-32 (5th Cir. 1993). The district court's order awarding attorney's fees under Rule 11 is not final until the amount to be awarded is determined. *Id.* at 131. In this case, the order affixing attorney's fees entered on December 27, 2013, and Martin timely filed

his notice of appeal on Monday, January 27, 2014. *See* FED. R. APP. P. 4(a)(1)(A).

With respect to the first issue, Martin appears to challenge the district court's entry of summary judgment against Bravenec on the ground that summary judgment would have been improper if the district court correctly exercised supplemental jurisdiction and applied Texas law to the adjudication of his claims. However, this Court previously affirmed the district court's grant of summary judgment, and Martin does not explain why he did not or could not raise the arguments asserted now in his earlier appeal of the judgment. Thus, this issue is without merit. *See Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 607-08 (5th Cir. 2004) (reiterating that a party cannot raise an issue on appeal that could have been raised in an earlier appeal in the same case). To the extent that this claim was raised below, it was properly denied.

Turning to the second issue, the district court may sanction a party, including a pro se litigant, under Rule 11 if it finds that the litigant filed a pleading for an improper purpose or that the pleading was frivolous. *See* FED. R. CIV. P. 11(b) & (c); *Whittington v. Lynaugh*, 842 F.2d 818, 820-21 (5th Cir. 1988). Sanctions may be imposed upon a party's motion if the motion is "made separately from any other motion," the motion describes the specific conduct that allegedly violates Rule 11(b), and the motion is served on the party to be sanctioned 21 days before it is filed in district court. *See Marlin v. Moody National Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008) (citing FED. R. CIV. P. 11(c)(2)). Alternatively, the court may sua sponte order a party to show cause why conduct specifically described in the order has not violated Rule 11(b). *See id.* (citing FED. R. CIV. P. 11(c)(3)). Although the district court need not hold a hearing, it must provide the litigant notice of the proposed sanctions and the opportunity to be heard to satisfy Rule 11 and the Due Process Clause.

*See Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191-92 (5th Cir. 1996). The court reviews an award of sanctions under Rule 11 for abuse of discretion. *See Marlin*, 533 F.3d at 377. A district court "necessarily abuses its discretion in imposing sanctions if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Elliott v. Tilton*, 64 F.3d 213, 215 (5th Cir. 1995).

In this case, the district court award of attorney's fees fails to comport with the requirements of Rule 11 and denied Martin due process. First, the district court erroneously found that Martin did not respond to its show cause order from 2012. In fact, Martin did respond, albeit inarticulately, on January 11, 2013, and January 14, 2013. Next, the district court appears to have granted Bravenec's motion for attorney's fees without considering Martin's objections and motions for reconsideration. The district court's original order granting the motion entered on the docket prior to Martin's objections and fails to acknowledge the objections. Likewise, the final order assessing the amount to be paid also fails to reference Martin's December 5, 2013, pleadings and was entered before Martin's December 27, 2013, objections and motion for reconsideration, which the district court ordered stricken.

Although the district court may properly enjoin vexatious litigation and sanction the same, it may not exercise its authority in a manner that deprives a litigant of his constitutional rights. *See Qureshi v. United States*, 600 F.3d 523, 525-26 (5th Cir. 2010). Thus, the district court abused its discretion when it struck Martin's objections. Notably, Martin withdrew the lis pendens lien of which Bravenec complained upon receiving Bravenec's motion for sanctions and filed a subsequent lis pendens lien that referenced only state court litigation. That is the purpose of the 21-day "safe harbor" provision: to provide a litigant the opportunity to withdraw challenged pleadings and thereby avoid

sanctions. *See In re Pratt*, 524 F.3d 580, 586-87 (5th Cir. 2008). Finally, Bravenec suggested below that the district court's December 2012 show cause order satisfied the "safe harbor" provision but cited no authority to support that assertion, and this court has strictly construed the requirements of FED. R. CIV. P. 11(c)(2). *See, e.g., Pratt*, 524 F.3d at 586-87; *Marlin*, 533 F.3d at 378-79; *Brunig v. Clark*, 560 F.3d 292, 298 n.20 (5th Cir. 2009). Because Bravenec did not comply with the safe harbor provision, the district court is deemed to have awarded the attorney's fees on its own motion, which is improper under Rule 11. *See Marlin*, 533 F.3d at 379; *Brunig*, 560 F.3d at 298. As this Court explained in *Marlin*, sanctions awarded on the court's initiative under Rule 11 "are limited to nonmonetary sanctions or a monetary penalty paid to the court." *See* 533 F.3d at 379.

AFFIRMED in part, VACATED in part, and REMANDED. Martin's motion to strike Bravenec's brief is DENIED. Martin's other motions are DENIED AS MOOT.

# B

SCANNED



PI2-20150198558-3

## THIRD PARTY PURCHASE MONEY VENDOR'S LIEN

**LIEN TRANSACTION DATE:**  October 31, 2003 (Deed Records Volume 10406, Pages 1601 and 1606).

**SUBJECT PROPERTY:**  1216 West Ave., City San Antonio and County of Bexar, Texas

**GRANTOR:**  Moroco Ventures, LLC.

**GRANTEE AND OWNER:**  Rowland J. Martin, Jr.

**THIRD PARTY BENEFICIARIES AND INDEMNITEES:**  Estate of Johnnie Mae King, Probate Case No. 2001-PC-1263 and Nicolas Williams.

**MAILING ADDRESS:**  951 Lombrano
San Antonio, Texas 78207

**PURPOSE OF THE RECORDING:** This re-recording of the lien interest created on October 31, 2003 memorializes the property interests that vested in the Owner on that date for ease of reference in on-going judicial proceedings. It is expressly disclaimed that the lien was first created on October 14, 2015.

**CONSIDERATION:**  The lien re-recorded herein is claimed against the grantor, Moroco Ventures, LLC, and all those claiming under the grants recorded as the (First) Deed of Trust to Roy Ramspeck and Annette G. Hanson, and as the (Second) Deed Of Trust to Albert McKnight and Edward Bravenec. The lien constitutes consideration for a payment in the amount of $135,000, which was made by the Owner, in his individual capacity, to Roy Ramspeck and Annette G. Hanson as a credit to enable the grantor and debtor entity, Moroco Ventures, LLC, to acquire the subject property for a purchase price of $284,500. The lien is referenced in the Warranty Deed with Vendor's Lien recorded in Volume 10406 Page 1601 as "other valuable consideration," and is further referenced in the (First) Deed Of Trust recorded in Volume 10406 Page 1606, in the section on "Other exceptions to Conveyances and Warranty," by way of express words of reservation stating that the conveyance is subject to "other than liens and conveyances," and in paragraph 14 of "General Provisions," where it is expressly stated that "The creation of a subordinate lien ... will not entitle Beneficiary to exercise the remedies provided" for the acceleration of the note. Consideration was given by Albert McKnight and Edward Bravenec, during an attorney client relationship in Probate Case No. 2001-PC-1263, in the Second Deed Of Trust granted by Moroco Ventures, LLC in Document #20050099395 on May 5, 2005, by way of "Prior Lien" reservations , and by way of the stipulation in paragraph 4 of the "General Provisions," with limitations on the second lien stating that "This lien shall remain superior to liens created later[]."

**PROPERTY DESCRIPTION:**  The property commonly known as 1216 West Ave, in San Antonio, Texas, is legally described as "Lots 1, 2, and 3, Block 50, new City Block 8806, LOS ANGELES HEIGHTS," and as further described in the attachment to this record.

**RETROACTIVE RESERVATIONS AND EXCEPTIONS TO CONVEYANCES AND WARRANTIES:**

1.      Until further notice, the lien interest herein re-recorded is subject to the indemnification obligations set forth in the Heirship Settlement Agreement in Probate Case No. 2001-PC-1263. It is declared that any and all interests in title claimed under the second deed of trust granted to Albert McKnight and Edward Bravenec are subject to the priority assigned by law to the vendors' lien herein recorded. The latter is made executory and inferior in relation to the purchase money lien by virtue of contractual exceptions to the conveyance in the first deed of trust, to wit: "all rights, obligations, and other matters emanating from and existing by reason of the ... operation of any governmental district, agency or authority," Bexar County Deed Records, Vol. 10406 Page 1607. By virtue of express provisions that subject the second deed of trust to the first deed of trust, Owner claims equitable title under *DTND Sierra Investments v. HSBD Bank U.S.A.*, Case No. 14-51142 (5th Cir., 2015), a court decision which by operation of law renders the interests acquired by Albert McKnight and Edward Bravenec by foreclosure on October 3, 2006 executory and inferior in relation to the lien herein re-recorded.

2.      It is declared that deed transfers from Albert McKnight and Edward Bravenec to assignees and successors in interest, including 1216 West Ave., Inc. , Edward Bravenec, and Torralba Properties, Inc., are subject to  the notice of lis pendens, and future amendments thereto if any,  which was referenced in the decision of the Texas Fourth District Court Of Appeals in *Martin v. Bravenec, et al*, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015).

3.     The owner disclaims liability for the recording of notices of lis pendens under authority of the decision of the U.S. Court of Appeals for the Fifth Circuit in *Martin v. Bravenec, et al*, Case No. 14-50093 (5th Cir., judgment filed October 2, 2015), wherein the court vacated the order of the U.S. District Court in Case No. SA 11-CV-0414 dated December 27, 2013, on abuse of discretion and due process grounds.

4.      The Owner received a leasehold interest in the subject property in lieu of monetary consideration which was recorded in the records of the Bexar County Appraisal District as a homestead.

Dated:  October 14, 2015

Rowland J. Martin
Individually and As Administrator For
The Estate of Johnnie Mae King

**STATE OF TEXAS**                                              )
**COUNTY OF BEXAR**                                       )

        This instrument was acknowledged before me on the 14th day of October 2015, by Rowland J. Martin in his capacity as a third party purchase money lien creditor of the limited liability company known as Moroco Ventures, LLC, whose charter is presently inactive.

CHARLCYE LANAE GLENEWINKEL
Notary Public. State of Texas
My Commission Expires
June 02. 2019

Notary Public, State of Texas

2

EXHIBIT "A"

5.  The land referred to in this policy is described as follows:

Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Record of Bexar County, Texas, SAVE AND EXCEPT there from a tract of land containing 0.00049 of an acre, being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991 recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas, being more particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said point being the POINT OF BEGINNING of the herein described tract;

THENCE S 89° 51' 30" E along the south line of West Olmos 10.01 feet to an iron rod set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30" an arc length of 15.72 feet, and whose radius point bears 90° southerly from said line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line of West Avenue at the Point of Tangency of said curve;

THENCE N 00° 05' 00" E along the east line of West Avenue 10.01 feet to the POINT OF BEGINNING, containing 0.00049 acres (21.51 square feet).

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

OCT 1 4 2015

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20150198558 Fees: $34.00
10/14/2015 4:49PM # Pages 3
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

C

Cause No. 2001-PC-1263

IN THE MATTER OF THE ESTATE OF ) IN THE PROBATE COURT
JOHNNIE MAE KING ) NUMBER ONE
) FOR BEXAR COUNTY, TEXAS

## ADMINISTRATOR'S CLASS 2 LIEN PURSUANT TO THE TEXAS ESTATES CODE

**LIEN RECORDING DATE:** October 14, 2014

**SUBJECT PROPERTY:** 951 Lombrano, City San Antonio and County of Bexar, Texas

**GRANTOR:** Estate of Johnnie Mae King

**GRANTEE:** Rowland J. Martin, Jr., Independent Administrator for the Estate of Johnnie Mae King

**MAILING ADDRESS:** 951 Lombrano
San Antonio, Texas 78207

**PURPOSE OF THE RECORDING:** This recording is made for ease of reference in on-going judicial proceedings to the Class 2 lien that is hereby declared pursuant to Estates Code Section 355.066(b), in consideration for (1) services rendered and in satisfaction of related expenses incurred during the decedent's last illness in the approximate amount of $12,000, (2) for the unspecified value of services rendered to correct clouds on title to real property of the estate due to coram non judice tax suit litigation that was vacated by the 150th District Court and the 224th District Court in 2013; and (3) for the expenditure of in kind resources from the Grantees individual estate in the amount of $135,000 during the attorney client relationship with the Law Office of McKnight and Bravenec.

**CONSIDERATION:** The Administrator warrants, particularly in relation to the Bexar County Tax Authorities' tax suit litigation in the 150th District Court in Case No. 2014-TA1-00224, that he is a bona fide creditor of the decedent; that he faithfully rendered services for the benefit of the decedent during her last illness through the formation and administration of the Johnnie Mae King Trust; that he incurred expenses for the benefit of the decedent during the last illness after the assets of the trust were assigned by mutual agreement to Opal Gilliam, through her husband Calvin Gilliam, as part of an heirship settlement; that he sustained losses to his personal estate as a benefactor of unperformed legal services promised by former attorneys of record, Albert McKnight and Edward Bravenec, who appeared through Law Office of McKnight and Bravenec in 2005. By virtue of the latter expenses, Grantee qualifies as a creditor and lien holder of the highest priority under Estates Code Section 355.066(b), separate and apart from future interests arising under the Heirship Settlement Agreement executed in 2008.

**PROPERTY DESCRIPTION:** The property commonly known as 951 Lombrano, in San Antonio, Texas, is legally described as "NCB 2095 BLK 20 LOT 35 E FT OF 14 & SW TRI OF 15".

1

**EXCEPTIONS TO CONVEYANCES AND WARRANTIES:**

1. The lien is recorded by the power vested in Grantee by the Probate Court as an Independent Administrator, and is subject to non-judicial foreclosure by Grantee with a privileged bidding credit in the amount of $147,000 and judicial review by courts with probate jurisdiction in due course.

2. Out of an abundance of caution to enable satisfaction of contingent liabilities against the Estate of King, Grantee has made a concurrent assignment of lien interests to implement the indemnification obligations set forth in the Heirship Settlement Agreement filed in Probate Case No. 2001-PC-1263. In order to honor and comply with Heirship Agreement indemnification obligations owed to the successors in interest of the late Opal Gilliam, beloved daughter of Johnnie Mae King, it is declared that the Estate of Johnnie Mae King is a beneficiary of the third party purchase money lien claim recorded on October 14, 2015 by Rowland J. Martin in his individual capacity against the property commonly known as 1216 West, in San Antonio, Texas, and which was originally recorded in Bexar County Deed Records Volume 10406, Pages 1601 and 1606. By the latter declaration, the Estate of Johnnie Mae King is also made a beneficiary of the express contractual exceptions to the conveyance in the first deed of trust granted by Moroco Ventures, LLC on October 31, 2003 which extends to "all rights, obligations, and other matters emanating from and existing by reason of the … operation of any governmental district, agency or authority," Bexar County Deed Records, Vol. 10406 Page 1607.

3. In accordance with contractual exceptions for governmental matters, Grantee expressly disclaims liability for the recording of liens and notices of lis pendens against the property known as 1216 West Ave. in San Antonio, Texas, and asserts that the exceptions recorded herein supersede the lis pendens expunction order which was entered by the Probate Court on March 19, 2014, and which was further referenced in the decision of the Texas 4th District Court Of Appeals in *Martin v. Bravenec, et al*, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015).

3. Grantee also disclaims liability for the recording of liens and notices of lis pendens under authority of the decision of the U.S. Court of Appeals for the Fifth Circuit in *Martin v. Bravenec, et al*, Case No. 14-50093 (5th Cir., judgment filed October 2, 2015), wherein the court vacated the order of the U.S. District Court in Case No. SA 11-CV-0414 dated December 27, 2013.

Dated: October 14, 2015

_____
Rowland J. Martin
As Administrator For
The Estate of Johnnie Mae King

**STATE OF TEXAS** )
**COUNTY OF BEXAR** )

This instrument was acknowledged before me on the 14th day of October 2015, by Rowland J. Martin in his capacity as Administrator for the Estate of Johnnie Mae King.

_____
Notary Public, State of Texas

CHARLCYE LANAE GLENEWINKEL
Notary Public, State of Texas
My Commission Expires
June 02, 2019

2